608

No. 32,428

FRANK T. HINES, Administrator of Veterans' Affairs, *Appellant*, v. J. L. NORTHRUP, as Guardian of Charles A. Mooberry, an Insane Person, *Appellee*.

(50 P. 2d 986)

Opinion filed November 9, 1935.

*James T. Brady, Edward E. Odom* and *John E. Haltigan,* all of Washington, D. C., for the appellant.

*Fred Rueb,* of St. Francis, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action arises out of objections filed to the annual accounting of the guardian of an insane veteran of the World War. The objection was filed by a representative of the administrator of veterans' affairs, pursuant to section 21 of the World War Veterans' Act of 1924, as amended (38 U. S. C. A. sec. 450) and at the same time an application for removal of the guardian was filed. The objection was overruled and the motion was denied by the probate court. An appeal was taken to the district court. The same result was had there. The cause was thereupon appealed to this court. The facts are about as follows:

Charles A. Mooberry became insane sometime in 1923. That year J. L. Northrup, appellee here, was appointed his guardian. He has held that position ever since. Mooberry was a disabled veteran of the World War. After the appointment of Northrup

there came into his hands as guardian from time to time certain pension money and rents and interest on pension money until on June 30, 1933, as shown by his annual account filed on September 22, 1933, there was in his hands the sum of $4,531.77.

During the time that J. L. Northrup was guardian for Mooberry he kept some funds on deposit in a checking account in the First National Bank at St. Francis, Kan. With the remainder of the funds he purchased certificates of deposit in the same bank, which became due six months from the date they were purchased. From the time the guardianship first started the guardian made regular reports in writing of his accounts to the probate court showing that some of the money of his ward was invested in certificates of deposit in the bank in question. These accounts were all approved without objection by the probate court. Sometime prior to June 30, 1932, Northrup bought two certificates of deposit in the First National Bank at St. Francis, each for $2,100. Each certificate bore interest at the rate of 4 percent per annum and was due six months from date. At this time he also had a deposit in the same bank in a checking account in the sum of $331.71.

In July, 1932, and subsequent to buying the two certificates spoken of, Northrup received a letter from the administrator of veterans' affairs requesting the guardian to comply with the law in the investment of the funds of his ward. Shortly thereafter the guardian personally took the matter up with the probate court and his method of handling the funds was approved, but no written order was ever placed of record.

On October 29, 1932, the First National Bank failed. Since the bank closed it has paid dividends amounting to 60 percent. The total dividends received by the guardian amount to $2,837.35.

The guardian filed an annual accounting on September 22, 1933. This accounting showed a loss of $3,014.93 on account of the bank failure. This accounting was at first approved by the probate court, but afterwards the administrator of veterans' affairs objected and the approval was set aside and the matter was set down for hearing. The objection of the administrator was that the guardian should have been surcharged and held liable for the loss sustained by reason of the bank failure.

A motion to discharge the guardian was also filed and both matters were heard at the same time. The probate court denied the

motion to discharge and overruled the objections to the report. On appeal the same action was taken by the district court—hence this appeal.

There is no question here about the good faith of the guardian. The court found that prior to its closing the bank had a good reputation as a safe and sound institution; that the guardian inquired about it and had no warning or knowledge of any unsound condition, but at all times, with the knowledge and approval of the probate court, considered the bank a sound, safe place to keep the funds of his ward and that it was safer than other forms of investment.

It is the contention of the appellant that it was the duty of the guardian to invest the funds of his ward; that buying a certificate of deposit was not an investment, but simply a loan to the bank, and hence the guardian should be held liable.

The statute that deals with this subject is R. S. 1933 Supp. 73-512. That section is part of an act providing for guardianships for insane veterans. It is as follows:

"Every guardian shall invest the funds of the estate in such manner or in such securities in which the guardian has no interest as allowed by law or approved by the court."

We agree that the above statute requires the guardian to invest the funds of his ward. It does not, however, provide in what securities the money should be invested.

We will consider this matter in connection with the statutory provisions in effect when the above section was enacted with reference to guardians and wards.

R. S. 38-210 provides as follows:

"Guardians of the property of minors must prosecute and defend for their wards. They must, also, in other respects, manage their interests, under the direction of the court; they may thus lease their lands or loan their money during their minority, and may do all other acts which the court may deem for the benefit of the wards."

R. S. 39-209 provides as follows:

"It shall be the duty of every such guardian to prosecute and defend all actions instituted in behalf of or against his ward, to collect all debts due or becoming due to his ward, and give acquittances or discharges therefor, and to adjust, settle and pay all demands due or becoming due from his ward, so far as his effects and estate will extend, as hereinafter provided."

R. S. 39-230 provides as follows:

"The probate court shall have full power to control the guardian of any such person in the management of the person and estate and the settlement of

his accounts, and may enforce and carry into execution its orders and judgments in the same manner as in cases of administration."

R. S. 39-210 provides as follows:

"Every probate court by whom any such person is committed to guardianship may make an order for the support, care and safe-keeping of such person, for the disposition or sale of his personal property as may be found necessary, for the management of his estate, for the support and maintenance of his family and education of his children, out of the proceeds of such estate; to set apart and reserve for the payment of debts; and to let, sell or mortgage any part of such estate, when necessary for the purposes above specified."

Passing by for the moment the question of whether the guardian should have secured the consent of the probate court before buying these certificates of deposit, we fail to find any provision in the statutes providing in what securities a guardian may invest. The authorities cited by appellant are not helpful in this respect. In every case where the guardian has been held liable there was a situation where the guardian had invested the money so as to vantage himself or he had failed to take ordinary care and precaution to safeguard the interests of his ward. There is no such an element as that here. The statute relied on describes the securities in which the guardian shall invest as those in which the guardian has no interest, as allowed by law or approved by the court. This act was a comprehensive one designed to cover the subject of guardianships for insane soldiers. We must assume that the legislature when it enacted the statute knew the provisions of statutes already in effect. Had it been the intention to provide that the money of a ward could only be invested in certain types of securities the legislature could easily have thus provided. But instead of that the act simply says "allowed by law." Since this is the case, then the rule to apply is whether the investment is one in which an ordinarily prudent business man would place his funds.

This court will take judicial notice of a practice as universal among the people of this state as that followed by the guardian in this case. Indeed an examination of the records in the office of the bank commissioner discloses that the amount of private funds carried in the banks of this state by depositors in the form of time deposits will aggregate millions of dollars. There are reasons for this. That the bank is a convenient place is one reason. A more potent reason is that the bank is regarded as the safest institution within the knowledge of the people. It is generally the criterion by

which people judge the safety and soundness of other investments. The people can see it. They have an opportunity to satisfy themselves as to the manner in which its business is conducted and of the soundness of its policies.

What securities should this court say were proper for the investment of the money of a ward? Should it be real-estate mortgages? The experience of the last few years would forbid us placing this class of investments ahead of certificates of deposit. Should we say municipal bonds? Unless the rule was restricted to bonds issued by municipalities of Kansas the certificate would be safer. Should it be industrial stocks and bonds? Here again the experience of recent years answers the question. Even after the bank in this case was forced to liquidate the creditors received a dividend of 60 percent of the original investment. It would be interesting to know how many of the investments of the types named paid any such a dividend under liquidation where such a course became necessary.

Counsel for appellant urges that the funds should have been invested in government bonds, but the trouble about that is that the time was when liberty bonds of the government could be bought at 70 cents on the dollar. How can it be said that a guardian who examined the whole field of investments and selected any one of these forms in which to invest the money of his ward should be liable for a loss sustained on account of some particular type of investment chosen? We hold that the purchasing of a time certificate in the bank in question was an investment of the funds belonging to the ward, as contemplated by the statute.

The appellant argues further that the statute not only provides that the investment be in securities permitted by law, but that the investment should be approved by the probate court, and that since no formal approval by the court was ever obtained here then the guardian is liable. The statutes in effect when the act providing for guardianship for insane veterans was enacted have already been set out in this opinion. One statute provides that the probate court shall have full power to control the guardian. Another provides that "guardians . . . must also in other respects manage their interests (the ward's) under the direction of the court." Can it be said there was not substantial compliance with those statutes in this case? From the time the first certificate was bought to the time when the management of the estate came under the secretary of

administration of veterans' affairs, the guardian made regular reports of his transactions to the probate court. Each of these reports stated that funds of the ward were invested in time deposits in this bank. Each of these reports was approved by the probate court. Aside from the conversations which occurred between the probate court and the guardian wherein this matter was discussed and oral approval given by the court, this court holds that the action of the court in approving the accounts of the guardian wherein these investments appeared was a substantial compliance with the statutes.

We have examined the authorities relied on by appellant to sustain its position here and find that they either deal with statutes where a mode of securing the approval of the court is laid down in detail or the guardian made some investment and concealed it from the knowledge of the court.

The judgment of the district court is affirmed.