In the Matter of the Estate of RICHARD A. HOTALING, JR., an Incompetent Person.

FRANK T. HINES, Administrator of Veterans' Affairs, Petitioner, Appellant; RICHARD A. HOTALING, SR., as Committee of RICHARD A. HOTALING, JR., Respondent.

Second Department April 9, 1937.

*William A. Gillcrist,* for the appellant.

No appearance or brief for the respondent.

CARSWELL, J. The facts, pertinent statutes and question involved are set out in greater detail in the minority opinion.

The appellant appeals from an order which denied his application to require a committee of an incompetent to invest certain funds forthwith. He claims to be aggrieved although the safeguarding and precise disposition and investment of these funds reposes by law within the discretion of the committee subject to the limitations and standards erected by law.

The question is not now justiciable. It is prematurely presented. Answering it now is in effect exercising a non or extra judicial function; giving an advisory opinion without authority therefor. (*Matter of State Industrial Comm.*, 224 N. Y. 13; *Reed* v. *Littleton*, 249 App. Div. 310, 312; *Matter of Kohns*, 158 Misc. 853, 856; *Anway* v. *Grand Rapids R. Co.*, 211 Mich. 592; 179 N. W. 350; note, 12 A. L. R. 26.) It should be answered only upon an accounting or some similar proceeding when the propriety of the conduct of the committee will be determined upon a factual showing after the event, if his conduct be then challenged.

Passing this point, the minority view assumes that in the investment and safeguarding of funds the statutes cited fix the *sole* rule of action and measure of obligation for a committee or a trustee. This is an inaccurate premise. There is another and more basic obligation which requires a trustee to act with prudence. The primary rule of conduct is prudence. It may dictate, after consulting, not courts, but competent banking or investment authorities (if the need for income, as here, be not urgent), that there be no fixed investment for the time being. The statutes are silent as to when the committee shall act. They leave to the discretion of the committee the decision upon the time of investment and in what particular securities and upon what terms. Imprudent purchase of a particular security or upon imprudent terms may result, after the event, in a surcharge, just as undue haste or undue delay may result in a surcharge. Circumstances will determine whether either of the latter grounds for complaint is properly invoked, and as these circumstances vary, so the proper time for prudent action, such as governs discreet men in their own like affairs, will likewise vary within reasonable limits. It is only when prudence counsels investment because an alternative course is less wise, safe or profitable, that recourse to the statutes with their investment directions is mandatory. Such statutes " leave untouched the obligation of a trustee to act with prudence, foresight and vigilance and without negligence " and do not disturb the further duty of a committee or trustee " to keep funds in a state of security, productive of interest and subject to future recall." (*Matter of Flint*, 240 App. Div. 217, 225, 226; affd., 266 N. Y. 607; *King* v. *Talbot*, 40 id. 76, 88; *Matter of Young*, 249 App. Div. 495; affd., 274 N. Y. 543.) The committee is bound to exercise such prudence as men of discretion employ in their own like affairs. (*McCabe* v. *Fowler*, 84 N. Y. 314; *Matter of Hall*, 164 id. 196, 200.)

The legislative directions were enacted with knowledge of the case law on the subject-matter, which latter continued operative as it did not collide with the statutes.

The statutory provisions are not an exclusive statement of the obligations and rules of conduct of a trustee or a committee, and hence are not enforcible in a particular situation when literal compliance with them may constitute imprudent or negligent conduct. Action pursuant to these statutes is presumptively prudent, but the presumption may be overthrown, by one aggrieved, by an affirmative showing of imprudence in the initial act of investment in a " legal " or the course pursued subsequent thereto. (*Matter of Cady*, 211 App. Div. 373, 375.)

The statutory provisions are to be applied and enforced in the light of actual conditions. Courts should not be blind to realities or require a trustee or committee to ignore actualities. A different course may imperil part of the principal of the funds. If a committee is forced, in disregard of money market conditions, to put the money in a fixed investment — to invest in a " legal " on a premium basis when, due to increases of interest rates generally in the not far future, a drop in value of the principal is imminent — then the committee is being forced to do an imprudent act in violation of the long-established doctrine of prudent conduct, which transcends the statutory directions or at least is co-extensive with them. A committee thus will be required to imperil in part the " security " of the funds and obstruct their being " subject to future recall " for more profitable investment except on a basis of loss of part of the principal. (*King* v. *Talbot, supra; Matter of Flint, supra*, p. 226.) A decrease in value of the principal thus enforced may readily amount to several times the yearly increase in the interest rate, brought about by such enforced action. When a view confined exclusively to the statutory measure of a committee's obligation is sought to be enforced, with such a disadvantageous investment course flowing therefrom, the committee properly seeks a denial of such an application. He justifies his course in keeping the principal distributed among savings banks by pointing out, what is common knowledge, that with respect to such trust funds the principal is safer in the savings banks with an interest return adequate for the time being; that placing the moneys in a fixed or less fluid form of investment under current money market conditions, with peril to principal as a consequence of decrease thereof would be an imprudent and negligent act. This is especially so when such accounts are guaranteed up to $5,000, which benefit would not be available otherwise for the protection of the funds.

It is common knowledge that we are in the midst of a cheap money market, which is not likely to become cheaper; that, on the contrary, interest rates are likely to become higher. Money forced into investment, in either short term or long term legal

investments, is, therefore, likely to be the subject of depreciation of principal. This ensuing loss may be far beyond the nominal gain in interest that would result from the transferring of these funds from a savings bank return basis — with the principal beyond peril — to a greater interest return basis as a consequence of immediate investment in " legals."

This same view applies to other " legals," such as first mortgages on real property. Safe mortgages are not presently available to a committee or a trustee, because savings banks have been and are taking over all the prime mortgages, and the only ones available to such as this committee involve a hazard not properly assumed by a committee or trustee within the standard of prudent conduct required by the cases.

The keeping of funds temporarily in savings banks, which are limited to kinds of investment specified in the statutes as required of trustees but which are not in fact available to individual trustees under current market conditions, is not violative of the statute and furnishes a degree of security and productivity not attainable by individual attempts at direct action in the same forms of investment.

A court, in its semi-cloistered position and its necessarily incomplete knowledge of workaday conditions from day to day, should not, without a factual showing, without banking or investment advice, without any evidence of what securities or mortgages are presently available and upon what terms, presume to possess a business judgment or wisdom or prescience which enables it to rule blindly upon an investment course in advance of the event. That is practically what is sought here by way of a forthwith veto of a continuance of the committee's present course. This court has no showing in detail in this record to enable it to determine what investments or the terms thereof are available to this particular committee. It is the duty of the committee to chart his course within the standards set by law. If he does so imprudently or in improper forms, then he may be surcharged after the event, with his corporate surety required to respond if the committee cannot.

It is not the proper function of a court blindly to approve a course in advance and favorably to appraise the degree of prudence exercised, without a factual showing as to its propriety, or impropriety, with the hazard of consequent loss to the estate by reason of the course being thus approved in advance.

The appellant, by precipitating this question at this time, is not serving the best interest of the incompetent or his estate, and this court should not lend itself, in advance, without detailed information, to what may prove to be an injudicious course.

These considerations, therefore, require that this court should not confine itself exclusively to the language of the statutes invoked as if they were, though they are not, the sole rule of conduct or measure of obligation binding upon a committee or a trustee.

The motion was properly denied. When conditions are more propitious, if the committee does not act of his own volition, a party in interest may avail of the effect of the new condition.

The order should be affirmed, without costs.

ADEL and TAYLOR, JJ., concur; HAGARTY, J., with whom LAZANSKY, P. J., concurs, dissents and writes for reversal.

HAGARTY, J. (dissenting). I dissent.

This is an appeal by the Administrator of Veterans' Affairs from an order denying his application to direct the committee of the estate of an incompetent and disabled veteran to invest surplus funds belonging to the incompetent in securities as provided by law. Those funds now amount to approximately $13,000, and are deposited in four savings banks, with the exception of a small amount represented by a checking account and cash on hand.

The facts are not in dispute, since the application is made on the uncontradicted affidavit of an attorney for the administrator and on the last annual inventory and account filed by the committee for the fiscal year ending November 12, 1935.

The account discloses that the estate has been conservatively administered. During the year 1935 there was received by the committee a total of $1,521.31, $1,200 of which was received as compensation from the United States government, and the balance, $321.31, represents the interest on the savings bank accounts. There was expended for the maintenance, support and small luxuries of the incompetent the sum of $630.79; so it is quite obvious that the estate is rapidly increasing by virtue of these accumulations.

I think the question is properly here, and need not await an accounting. The petitioner, Administrator of Veterans' Affairs, is charged with responsibility for the welfare of incompetent veterans (U. S. Code, tit. 38, § 434) and is specifically recognized as a proper party in interest for the purpose of " appearing, in behalf of a ward of the administration." (Civ. Prac. Act, § 1384-t.) The committee is appointed by the Supreme Court and accounts to it, and is subject to removal by the court in its discretion. When the administrator brings to the attention of the court that its appointee is violating the express provisions of a statute governing his conduct, it is incumbent upon the court, of which in effect the

incompetent is a ward, to act by direction to the committee rather than to await an accounting and endeavor to recoup losses which may eventuate by a surcharge upon the committee.

The care and custody of persons of unsound mind and the possession and control of their estates are vested in the State. (*Hughes* v. *Jones*, 116 N. Y. 67, 74; *Sporza* v. *German Savings Bank*, 192 id. 8, 14, 15.) When the State, through the Legislature as *parens patriæ*, directs the conduct of a committee, which is but a custodian, the latter has no alternative but to obey. The Legislature enacted article 81-A of the Civil Practice Act, which, as stated in the heading thereto, has to do with " Proceedings relative to incompetent veterans and infant wards of the United States Veterans' Bureau." Section 1384-l under that article, entitled " Investments by guardians," reads: " Every guardian *shall* invest the funds of the estate in the same kind of securities as those in which savings banks of this State are by law authorized to invest the money deposited therein, and the income derived therefrom, and in bonds and mortgages on unincumbered real property in this State worth fifty per centum more than the amount loaned thereon."

It is important to observe that the imperative word " shall " is used in the section quoted, as distinguished from the word " may " in section 21 of the Personal Property Law, entitled " Investment of trust funds," and in section 111 of the Decedent Estate Law, both of which have to do with investments by trustees, executors, administrators or other persons holding trust funds. Section 85 of the Domestic Relations Law, having to do with investment of trust funds by guardians, provides that a guardian has the powers provided by section 111 of the Decedent Estate Law for the investment of trust funds, " and must not invest the funds in any other securities."

A deposit in a bank is not an investment of funds. (*Erie County Savings Bank* v. *Coit*, 104 N. Y. 532; *Matter of Patterson*, 18 Hun, 221; affd., 78 N. Y. 608; *Upton* v. *New York & Erie Bank*, 13 Hun, 269.) In any event, the law does not provide for the deposit of money in savings banks by a committee, as it should if that were the intent of the Legislature, but directs that the funds " shall " be invested " in the same kind of securities as those in which savings banks of this State are by law authorized to invest the money deposited therein." No doubt the Legislature had in mind the receipt by the guardian of the net proceeds of the investment rather than a rate of interest declared on a deposit by a savings bank.

My opinion is that the word " shall " in section 1384-1 of the Civil Practice Act is tantamount to a command, and leaves in the committee no discretionary power as to the character of the investment. (*Rosenblum* v. *Gorman*, 21 App. Div. 618, 620.) Such investment, under the section, must be in those securities in which savings banks may invest their own money, as provided in section 239 of the Banking Law. That law, however, among others, provides for investment in mortgages secured by real estate up to sixty per cent of the appraised valuation, whereas the veteran's guardian is limited, by section 1384-1 of the Civil Practice Act, to such mortgage loans on unincumbered real property as may be worth fifty per cent more than the amount loaned thereon. With that exception, it appears that the Banking Law controls the investments. Discretion in the selection of investments enumerated in the Banking Law is vested in the guardian.

The order should be reversed on the law and the motion granted, without costs.

LAZANSKY, P. J., concurs with HAGARTY, J.

Order denying application to compel the committee of an incompetent veteran to invest surplus funds in securities legal for trust funds pursuant to section 1384-1 of the Civil Practice Act affirmed, without costs.