In the Matter of the Accounting of FANNIE STUPACK, as General Guardian of LILLIAN STUPACK, an Infant, Appellant.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant; CYRUS S. JULLIEN, as Special Guardian of LILLIAN STUPACK, an Infant, Respondent.

Argued March 4, 1937; decided April 27, 1937.

*Thomas E. White, R. Elliott Davis* and *Frederick E. Zvirin* for appellants. The mortgage investments in question were within the meaning and intent of section 111 of the Decedent Estate Law (Cons. Laws, ch. 13) made applicable to guardians by section 85 of the Domestic Relations Law (Cons. Laws, ch. 14). (*Matter of Nix,* 154 Misc. Rep. 61; *Matter of People [Title & Mortgage Guarantee Co.],* 264 N. Y. 69; *Matter of Alexander,* 152 Misc. Rep. 354; *United States* v. *Falk & Brother,* 204 U. S. 143; *United States* v. *Hermanos y Compania,* 209 U. S. 337.) If there were any ambiguity in the statute it should be construed to include the investments before the court because of the general practice adopted by fiduciaries while the statute was in effect and because of acquiescence in and recognition by governmental officers of such practice. (*Anderson* v. *Title Guarantee*

& *Trust Co.*, 160 Misc. Rep. 881; *Matter of Nix*, 154 Misc. Rep. 61; *City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543.)

*Wilkie Bushby, Edwin W. Cooney, Albert B. Maginnes, John C. Pirie, Edward L. Hunt, Jr.*, and *Leonard Blue* for New York State Bankers Association, *amicus curiæ.* The Legislature intended that group mortgage certificates should be authorized investments for trust funds under section 21 of the Personal Property Law (Cons. Laws, ch. 41) and section 111 of the Decedent Estate Law and for many years there has been a practical construction of these statutes by the Legislature to that effect. (*Matter of People* [*Title & Mortgage Guarantee Co.*], 264 N. Y. 69; *People ex rel. Einsfeld* v. *Murray*, 149 N. Y. 367; *People ex rel. Cotte* v. *Gilbert*, 226 N. Y. 103; *United States* v. *Hermanos y Compania*, 209 U. S. 337; *Provost* v. *United States*, 269 U. S. 443; *Matter of Nix*, 154 Misc. Rep. 61; *Chesterman* v. *Eyland*, 81 N. Y. 398; *Barry* v. *Lambert*, 98 N. Y. 300; *Lawyers Mortgage Co.* v. *Anderson*, 67 Fed. Rep. [2d] 889; *Title Guarantee & Trust Co.* v. *Bowers*, 67 Fed. Rep. [2d] 892; *Matter of People* [*New York Title & Mortgage Co.*], 264 N. Y. 475; *Matter of Alexander*, 152 Misc. Rep. 354; *King* v. *Talbot*, 40 N. Y. 76; *Adair* v. *Brimmer*, 74 N. Y. 539; *Pratt* v. *Eaton*, 79 N. Y. 449.)

*John F. Kavanagh, amicus curiæ.* Mortgage participation certificates, such as are involved herein, were mortgage investments and legal for fiduciaries under section 111 of the Decedent Estate Law. (*Matter of People* [*Westchester Title & Trust Co.*], 268 N. Y. 432; *Matter of People* [*Title & Mortgage Guarantee Co.*], 264 N. Y. 69; *E. T. C. Corp.* v. *Title Guarantee & Trust Co.*, 271 N. Y. 124.) The certificates involved herein are legal investments. (*Matter of People* v. *Westchester Title & Trust Co.*, 268 N. Y. 432; *Matter of Flint*, 240 App. Div. 217; 266 N. Y. 607; *E. T. C. Corp.* v. *Title Guarantee & Trust Co.*, 271 N. Y. 124; *Matter of Buffalo Series D Corp.*,

270 N. Y. 629; *Matter of Nix*, 154 Misc. Rep. 61; *Matter of Marczak* v. *B. C. R. R. Co.*, 262 N. Y. 472; *Matter of Alexander*, 152 Misc. Rep. 354; *Matter of Turner*, 156 Misc. Rep. 68; *Matter of Mulford*, 149 Misc. Rep. 728; *Matter of Frazer*, 150 Misc. Rep. 43; *Matter of Jacobs,* 152 Misc. Rep. 139; *Matter of De Winter*, 154 Misc. Rep. 50; *Matter of Balfe*, 152 Misc. Rep. 739; 245 App. Div. 22; *Matter of Blake*, 146 Misc. Rep. 780; *Matter of Froelich*, 150 Misc. Rep. 371.)

*Cyrus S. Jullien*, as special guardian, respondent. It was the duty and obligation of the general guardian to invest guardianship funds in investments authorized by statute and to exercise prudence in the investment of such funds. (*Delafield* v. *Barret*, 270 N. Y. 43; *National Surety Co.* v. *Manhattan Mortgage Co.*, 185 App. Div. 733; *Costello* v. *Costello*, 209 N. Y. 252; *Matter of Muller*, 155 Misc. Rep. 748; *Matter of Clark*, 257 N. Y. 132.) The mortgage certificates involved herein were not legal for the investments of the trust funds in the hands of the general guardian. (*People* v. *Title & Mortgage Guarantee Co.*, 264 N. Y. 69; *Matter of Title & Mortgage Guarantee Co.*, 246 App. Div. 435; *Prudential Ins. Co.* v. *Liberdar Holding Corp.*, 72 Fed. Rep. [2d] 395; *Mortgage Guarantee Co.* v. *Welch*, 38 Fed. Rep. [2d] 184; *Lawyers Mortgage Co.* v. *Anderson*, 67 Fed. Rep. [2d] 889; *Title Guarantee & Trust Co.* v. *Bowers*, 67 Fed. Rep. [2d] 892; *Ross* v. *Savings & Investment Co.*, 120 N. J. Eq. 87; *Matter of Title & Mortgage Guarantee Co.*, 246 App. Div. 435; *Matter of Allen*, 142 Misc. Rep. 113; *Chesterman* v. *Eyland*, 81 N. Y. 398; *Barry* v. *Lambert*, 98 N. Y. 300; *Matter of Union Trust Co.*, 219 N. Y. 514; *Transit Comm.* v. *Long Island R. R. Co.*, 253 N. Y. 345; *Burnside* v. *Whitney*, 21 N. Y. 148.)

LEHMAN, J. Upon the accounting of Fannie Stupack, as general guardian of her daughter, Lillian Stupack, the fiduciary was surcharged with the sum of $27,500 which she had invested in guaranteed mortgage certifi-

cates, Series F-1, of New York Title and Mortgage Company. The Surrogate held that such certificates are not legal investments for trust funds. The general guardian contends that such investments are authorized by section 111 of the Decedent Estate Law (Cons. Laws, ch. 13) (made applicable to investments of general guardians by section 85 of the Domestic Relations Law [Cons. Laws, ch. 14]).

Prior to 1918, section 111 of the Decedent Estate Law provided that " an executor, administrator, trustee or other person holding trust funds for investment may invest the same in the same kind of securities as those in which savings banks of this state are by law authorized to invest the money deposited therein, and the income derived therefrom, and in bonds and mortgages on unincumbered real property in this state worth fifty per centum more than the amount loaned thereon." By amendment to this section, made by chapter 544 of the Laws of 1918, specific authority was added for investment in shares or parts of mortgages. Some unimportant changes in the language of that section were made thereafter, and in 1929 and 1930, when the guardian made the investments which have been held to be unlawful, the section expressly authorized investment " in shares or parts of such bonds and mortgages, provided that any share or part of such bond and mortgage so held shall not be subordinate to any other shares thereof and shall not be subject to any prior interest therein, and provided further that bonds and mortgages in parts of which any fiduciary may invest trust funds together with any guaranties of payment, insurance policies and other instruments and evidences of title relating thereto shall be held for the benefit of such fiduciary and of any other persons interested in such bonds or mortgages by a trust company, a bank authorized to conduct a trust department or title guaranty corporation organized under the laws of this State, or a national bank located in this State and duly authorized to act as a trustee therein, and that

a certificate setting forth that such corporation holds such instruments for the benefit of such fiduciary and of any other persons who may be interested in such bond and mortgage among whom the corporation holding such instruments may be included, be executed by such corporation and delivered to each person who becomes interested in such bond and mortgage. * * *." The question presented upon this appeal is whether the certificates of Series F-1 of New York Title and Mortgage Company fall within the scope of that section.

These certificates are guaranteed " First Mortgage Certificates " and are issued in varying amounts. Each provides, among other things, that New York Title and Mortgage Company " hereby sells and assigns to the registered holder hereof an undivided co-ordinate share of the same amount in the principal sum * * * secured to the Company in the bonds and mortgages deposited, or which may hereafter be deposited, by the Company with the American Trust Company (hereinafter called ' the Depositary '), as Depositary under the terms of an agreement dated February 21, 1927, * * * subject to which agreement this Certificate is issued, and to the terms of which the holder hereof does hereby assent and agree, together with a corresponding share, at the rate of five and one-half per cent. per annum, in the interest on the said principal sum, the duplicate original of which agreement is open to the inspection of all registered holders of Certificates, at the office of said Depositary or of the New York Title and Mortgage Company, during business hours.

" This certificate is one of a series of certificates of interest of like tenor issued by the Company to an amount not exceeding in the aggregate the principal sum secured by the bonds and mortgages deposited, or which may hereafter be deposited, under the terms of the agreement hereinabove referred to, wherein the Company covenants and agrees, among other things, and hereby agrees to and with each and every holder of this · certificate, as

follows: That there shall be no preference or priority in favor of any share in the deposited bonds and mortgages, or of any certificate of interest;

"That each deposited mortgage shall be accompanied by a policy of title insurance, issued by the New York Title and Mortgage Company under its corporate seal, insuring that such mortgage is a valid first lien for the amount therein specified, with interest, upon the real property covered thereby, which shall be only real property improved for business or residence purposes, and situated within the limits of the City of New York, as the same now are, or may hereafter be, fixed by law, and by a sworn certificate of the Company's expert appraiser, showing the appraised value of the property covered thereby, which shall be at least fifty per cent. greater than the principal sum so secured."

Annexed to each certificate is the agreement with the depositary and a "certification" by the depositary, which reads as follows: "This is to certify that the within is one of the Certificates of Series F-1, issued by New York Title and Mortgage Company, and that there have been deposited with the Undersigned the bonds and mortgages and other instruments mentioned herein, and the same are held by the Undersigned in accordance with the agreement herein recited."

It is plain that the certificates were *intended* to represent "shares or parts" of bonds and mortgages in which trustees might lawfully invest trust funds in accordance with the provisions of the statute. Each purports to be an assignment of a "share or part" of bonds and mortgages which have been deposited with a trust company. They contain a covenant against priority of interest in favor of any other share in the deposited bonds and mortgages. The difficulties in this case arise from additional provisions in the certificate and in the agreement with the depositary "subject to which the Certificate is issued."

The primary difficulty is that under those provisions New York Title and Guarantee Company retains an interest in the bonds and mortgages. It guarantees to the registered holder of the certificate " payment of the principal and interest of the deposited bonds and mortgages to an extent sufficient to pay the principal and interest of all certificates issued under said agreement," but it may exercise certain powers over these bonds and mortgages including the power to " withdraw from deposit deposited bonds and mortgages and to substitute other first mortgages, accompanied by policies of title and certificates of fire insurance and certificates as to appraisal, in their place, to such an amount that the principal sum of all deposited bonds and mortgages shall never be less than the principal sum of the outstanding certificates of interest." In consequence of those and other provisions, the interest acquired by those who invest in the certificates is, at most, an incomplete or conditional share in the bonds and mortgages. Indeed, in *Matter of People (Title & Mortgage Guarantee Co.)* (264 N. Y. 69, at p. 88), this court, in an opinion which I wrote, said: " Certainly the holder acquires, prior to default, no rights in the mortgages other or greater than the rights of a holder of collateral security and the guaranty company retains at least the rights of an owner who has cumbered his title with a lien."

In that case our task was to determine the jural relations and rights created by the written agreement embodied in the participation certificates. We were free to disregard the labels applied by the parties to the agreement and to provide our own description and classification of these rights and obligations based, not on the labels, but on the nature of the obligations and the rights granted. These jural relations, we pointed out, were not accurately described in the certificates. In form, each certificate purported to assign a share in a group of mortgages. In fact, the holder of the certificate did not

become the owner of a share in the group of mortgages deposited with the bank or trust company, for the insurance company retained a right to substitute other mortgages for the mortgages so deposited. We found that the rights of certificate holders are more nearly analogous to the rights of a holder of collateral security than to the rights of an owner of a part or share in the mortgages deposited. Even so, by purchase of a certificate, the investor acquired a fractional interest in, and a right to resort to a group of mortgages which, though otherwise subject to change at the will of the obligor, could include only mortgages on " real property improved for business or residence purposes, and situated within the limits of the City of New York " and must be accompanied " by a sworn certificate of the Company's expert appraiser, showing the appraised value of the property covered thereby, which shall be at least fifty per cent. greater than the principal sum so secured."

It may be conceded that an investment in such certificates does not, with complete accuracy, fit the statutory description of lawful investments of trust funds; but our task in this case is not to determine the correct classification of the rights and obligations created by the certificates or even to determine whether the Legislature has accurately described them. Our problem is whether the Legislature, by the language used in describing lawful investments of trust funds *intended* to include in that description investment in mortgage certificates like those in which, as shown upon the accounting in this case, the infant's estate has been invested; and whether a fiduciary reading the statute with reasonable care would so understand. For that purpose we must read the language of the statute in the light of its history and of the conditions prevailing when the statute was adopted; and must consider, too, the construction which the Legislature, the administrative officers of the State and the general public placed upon the statute prior to and at the time the investments by the general guardian were made.

In 1885 the Legislature enacted a statute permitting the incorporation of companies to guarantee real estate titles (Laws of 1885, ch. 538). In 1892, when the Insurance Law (Cons. Laws, ch. 28) was enacted, the provisions relating to title guaranty companies were placed in article V thereof. Section 170 (Subd. 1) of that article provided that such companies should have power " To examine titles to real property and chattels real, to procure and furnish information in relation thereto, make and guarantee the correctness of searches for all instruments, liens or charges affecting the same; and guarantee or insure bonds and mortgages and the owners of real property and chattels real and others interested therein against loss by reason of defective titles thereto and other incumbrances thereon, which shall be known as a title guaranty corporation." (Laws of 1892, ch. 690.) By chapter 543 of the Laws of 1904 the section was amended to authorize the companies to " guarantee or insure *the payment of* bonds and mortgages." (The italicized words were, at that time, inserted in the statute.) By chapter 525 of the Laws of 1911 the section was again amended to authorize the companies in addition to " invest in, purchase and sell, with such guarantee or with guarantee only against loss by reason of defective title or incumbrances, such bonds and mortgages as are lawful investments for insurance companies under this act." The powers of the companies were thereafter further amended by chapter 215 of the Laws of 1913.

The companies, pursuant to these powers, sold to investors with their guaranty, not only whole mortgages but also certificates of participation in single mortgages and in groups of mortgages. The Legislature had not at that time provided that fiduciaries might invest trust funds in parts or shares of mortgages or in certificates issued by title and mortgage insurance companies, though a fiduciary holding a number of trust funds, might, even then, invest them, subject to proper safeguards, in a single mortgage. (*Matter of Union Trust Co.* [*Hoffman*

*Estate*], 219 N. Y. 514.) By chapter 385 of the Laws of 1917 the Banking Law (Cons. Laws, ch. 2), section 188, subdivision 7, was amended to provide that investment of trust funds by a corporate fiduciary might be made by apportioning to any estate or fund held by the fiduciary " a part interest in a bond and mortgage *held* * * * *in the name of such corporation.*" At the same session the Legislature passed a bill which was intended to authorize all fiduciaries to invest in " parts or shares " of such mortgages which were not held in the name of the fiduciary. That bill was vetoed by the Governor, but a similar bill was passed in 1918 and became chapter 544 of the Laws of 1918, amending in the manner set forth at the beginning of this opinion section 111 of the Decedent Estate Law and section 21 of the Personal Property Law (Cons. Laws, ch. 41) so as to authorize fiduciaries to make such investments.

It may hardly be doubted that when the Legislature in 1918 amended the statutes governing the investment of trust funds by fiduciaries, it intended to authorize investments in the certificates of ownership in " parts or shares of mortgages " which insurance companies were authorized under the provisions of section 170 of the Insurance Law to sell to investors. It is not disputed that at that time the title companies were selling to investors certificates of a fractional share of a single mortgage and also certificates purporting to represent fractional shares in groups of mortgages — both where the group of mortgages was fixed and the company had no power to withdraw any mortgages and substitute others in their place, and where the company had reserved such power of substitution. (See Report to the Governor by George W. Alger, Commissioner appointed under the Executive Law [Cons. Laws, ch. 18], dated October 5, 1934, pages 10 and 11.) It is by no means clear that the Legislature intended to authorize the sale of certificates of participation in groups of mortgages where the company reserved a power of substitution, and in 1915 the Super-

intendent of Insurance asked the Attorney-General for an opinion on the legality of an issue of certificates where the company had reserved such power of disposition.

The opinion of the Attorney-General in response to the question of the Superintendent, states in part:

" It is true that this assignment is not absolute and unconditional, but is upon condition, among others, that the mortgage company may withdraw one or more of the group of mortgages deposited with the mortgage company, a fractional interest in which has been assigned to a certificate holder, and substitute therefor a mortgage or mortgages of like amount, character and quality, in which event the fractional interest of the assignee or certificate holder in the withdrawn mortgage or mortgages ceases, and the same fractional interest attaches to the substituted mortgage or mortgages.

" If the mortgage company has the right, under section 170 of the Insurance Law, to sell and assign by ordinary assignment a fractional interest in a mortgage, and I see no reason to doubt that it has that right, I am unable to see why it may not lawfully agree with the assignee that upon the demand of the mortgage company the assignee will retransfer to the mortgage company his fractional interest so assigned to him, and accept in lieu and place thereof from the mortgage company the assignment of the same fractional interest in another mortgage of the same kind, character and quality.

" Such, in my opinion, is the real nature of the transaction between the mortgage company and the certificate holders in question here, the only difference being, as I view it, that for convenience of all parties to the transaction, instead of an assignment from the mortgage company directly to the assignee the mortgages are deposited with the trust company as trustee for the mortgage company and for the certificate holders which, in my judgment, in no way changes the nature of the transaction.

" I conclude that the practice inquired about is not unlawful, and that if there be question with regard to the propriety of such transaction, it may be a question of administrative policy not for this office to determine." (Opinion of the Attorney-General, May 1, 1915, reported in N. Y. Sen. Docs. 138th Session, 1915, vol. 29, No. 44, part 5, pp. 182, 183.)

The opinion of the Attorney-General referred solely to the legality of the sale of such certificates to individual investors. He was not at that time concerned with the sale of such certificates to fiduciaries, for prior to the enactment of chapter 544 of the Laws of 1918 any investment of trust funds in a certificate of any fractional share, even in a single mortgage or in a fixed group of mortgages, would unquestionably have been illegal. The significance of the opinion lies only in the fact that thereafter and at the time when the Legislature did authorize investment of trust funds in a share or part of a mortgage, the Attorney-General had rendered an official opinion that the practice by the companies of selling certificates of participation in a group of mortgages was a lawful exercise of the authority conferred by section 170 of the Insurance Law, even though the company reserved a right of substitution, and that such a transaction constituted a transfer of a fractional *share* of mortgages to the holder of the certificate.

At least, it was then arguable that the Legislature intended to include investments in such certificates, within the statutory description of investments " in shares or parts of such bonds and mortgages " which fiduciaries made lawfully. If it did not so intend, it inadvertently laid a snare for unwary fiduciaries. For ten years it appears that such certificates were widely advertised as legal investments for trust funds. Question of the legality of such advertisements and investments might still remain, but until 1928 the Superintendent of Insurance apparently did not challenge the propriety of the

advertisements, and no court passed upon the legality of investments in such certificates by fiduciaries.

In 1928 the Attorney-General rendered an opinion at the request of the Superintendent of Insurance in which it was said:

" There are three situations which might be covered by the above quoted language: (1) Where there is but one mortgage against which participating certificates are issued (quite obviously permitted by the statute); (2) where there is a fixed group of mortgages which the title company has no power to change, and (3) where the title company may change or substitute the mortgages in any group.

" Counsel for one of the title companies have sent us able briefs in interpretation of the statute and upon the right of trustees to invest in not only form (1) but in forms (2) and (3) as well. We have been slow to be convinced, but have given way when shown that all three forms of mortgage participation certificates were in use before the statute authorizing trustees to invest in such certificates was passed. That is to say, there was presented before the Legislature an existing kind or kinds of investment in which other investors were placing their funds, and by the statute we have been discussing (Chapter 544, Laws of 1918) the Legislature apparently opened the same field to the trustee or fiduciary. Certain it is that the plan of grouping and substituting mortgages in any group was used as early as 1915 (Opinion of Attorney-General, May 1, 1915) and has been used ever since.

" For these reasons we believe the statute should now be construed to authorize the investment by trustees and fiduciaries in participation certificates in groups of mortgages, and in groups where the power of substitution is conferred." (Opinions of the Attorney-General, 1928, pp. 211, 212.)

The Superintendent of Insurance made the opinion part of his report to the Legislature. Thereafter the

Legislature repeatedly amended the statute, but without indicating any failure to acquiesce in the construction placed by the Attorney-General upon its scope.

It was in that situation that the guardian made the investments which the courts below have held are unlawful. Certainly she had ground to believe that the statute was intended to authorize the investment she made. That was the generally accepted construction of the statute; a construction which rested securely upon the opinion of the highest law officer of the State, and was in conformity with the administrative practice of the officer of the State charged with the enforcement of the law.

In the report of George W. Alger (*supra*), page 25, the Commissioner pointed out that after the Legislature had in 1918 amended section 111 of the Decedent Estate Law.

" It was still far from clear whether trustees could invest in group series. In the following ten years no court decision interpreted the amendment quoted above so as to permit such investments by trustees in group series. Nevertheless, during this period and subsequent to this amendment both types of certificates were freely advertised and sold by these companies as legal investments for trustees. This doubtful question was finally presented for decision not to the courts but to the Attorney General who, in 1928, wrote an opinion approving group series certificates as legal investments even where the right of substitution existed (Opinions of the Attorney-General, 1928, p. 211).

" Although the Attorney General in his opinion stated that he had reached his interpretation based upon the able briefs of one of the title companies, and although he stated ' we have been slow to be convinced ' by this persuasive brief, and although the public policy of permitting such investments was clearly questionable, the Legislature itself took no steps to correct the situation, or to give effect to the objections previously made by

the Association of the Bar to which I have referred. After the Attorney General's opinion had been rendered a number of amendments were made to Section 111 of the Decedent Estate Law and to Section 21 of the Personal Property Law without, however, any amendment to that portion of these sections which was enacted by Chapter 544 of the Laws of 1918 from which I have quoted above. It will thus appear that the Attorney General's opinion must be deemed to have the sanction of the Legislature."

Careful analysis of the terms of the statute may still cause some doubt as to whether the construction placed upon the statute by the mortgage companies and by fiduciaries, by the Legislature and by the officers of the State, is quite justified. Indeed, experience now proves that the statute so construed constituted an unwise exercise of legislative authority. None the less under the circumstances disclosed, careful fiduciaries and their legal advisers could not reasonably doubt that the language used by the Legislature in describing investments of trust funds which fiduciaries might lawfully make was intended to include investments in certificates like those in Series F-1.

We have not overlooked other objections to the legality of investment in these certificates. Though those objections are not without weight, we do not here analyse them in detail. They fall with the primary objection which we have considered at length.

The order of the Appellate Division and the decree of the Surrogate's Court should be reversed, with costs in all courts to the petitioner and the special guardian payable out of the estate, and the matter remitted to the Surrogate's Court for the entry of a decree in accordance with this opinion.

FINCH, J. (dissenting). To me it seems very clear that the Legislature did not grant permission to trustees to invest in certificates of participation in a group of mort-

gages where the group is not fixed but is subject to change and substitution at the will of the mortgage company. The language of the statute does not authorize such investments. It permits fiduciaries to invest " in bonds and mortgages on unincumbered real property in this state worth fifty per centum more than the amount loaned thereon, and in shares or parts of such bonds and mortgages, * * *." The statute does not authorize the trustee, even by implication, to delegate to the mortgage company his discretion to determine in what bonds or mortgages or shares or parts thereof the funds should be invested. To permit the investment in the certificates involved in the case at bar constitutes an irrevocable delegation of this discretionary power.

It is urged that it has been generally accepted that the statute permitted such investments and, therefore, we should read into the statute this practical construction. Some support for this argument is found in an opinion of the Attorney-General rendered in 1928 in which he stated that he believed that the statute should be construed to authorize such investments. Such a statement by the Attorney-General is not binding upon the courts. Nor is it clear that the practical construction which the appellant asserts was placed on the statute was universally accepted. That some at least doubted that the statute permitted of such construction is evidenced by the fact that in 1930 a bill to legalize such investments was introduced in the Legislature, and that the bill was condemned by a publication circulating among corporate fiduciaries and by members of the bar. (50 Trust Companies Magazine, p. 182 [1930]; Simpson, Participation Certificates Permitting Substitutions of Securities as Legal Investments for Trust Funds, 7 N. Y. U. Law Quart. Rev. p. 950; Report of Committee on State Legislation of the Association of the Bar of the City of New York [No. 69]; Bulletins of Committee on State Legislation [1930], p. 122.) The bill died in committee.

We cannot draw any definite conclusions from the failure of the legislative committees to report the bill or from the criticisms of the bill, but that it was introduced and appraised shows that there was not unanimous acceptance of this so-called practical construction.

The mere fact that a number of trustees have invested in such certificates is not sufficient reason for reading into the statute a grant of authority to trustees to delegate to mortgage companies the discretion to determine in what property the trust fund should be invested. Such discretion has always been held to be non-delegable and the way of the court lies plain unless a statute by clear and express language alters the wise and established rule. (See 3 Bogert on The Law of Trusts and Trustees, p. 2028; *Matter of Allen*, 142 Misc. Rep. 113.)

The decree of the Surrogate, unanimously affirmed by the Appellate Division, was right and should be affirmed.

CRANE, Ch. J., O'BRIEN, HUBBS and LOUGHRAN, JJ., concur with LEHMAN, J.; FINCH, J., dissents in opinion in which RIPPEY, J., concurs.

Ordered accordingly.