In the Matter of the Final Accounting of HUGH M. HEWSON, Deceased Committee of DOMINICK FARINA, an Incompetent Person and an Inmate of the Matteawan State Hospital.

GEORGE YATES HEWSON, Administrator C. T. A. of the Estate of HUGH M. HEWSON, Deceased Committee of DOMINICK FARINA, and FIDELITY and DEPOSIT COMPANY OF MARYLAND, Appellants; JAMES F. DONOHUE, Special Guardian for DOMINICK FARINA, an Incompetent Person, and VETERANS' ADMINISTRATION, Respondents.

Second Department, March 18, 1938.

*Thomas E. White* [*R. Elliott Davis* and *John M. O'Rourke* with him on the brief], for the appellants.

*James F. Donohue,* respondent special guardian, in person.

*William A. Gillcrist,* for the respondent Veterans' Administration.

*Julius Hallheimer,* as *amicus curiæ.*

JOHNSTON, J. The question to be determined is whether, under the statute (Civ. Prac. Act, art. 81-A, § 1384-l, added by Laws of 1929, chap. 340), hereinafter referred to as the Veterans' Act, the committee or guardian of an incompetent war veteran is authorized to invest in guaranteed mortgage certificates moneys received from the United States Veterans' Administration.

In 1929 Hugh M. Hewson was appointed committee of Dominick Farina, an incompetent war veteran. The Fidelity and Deposit Company of Maryland became the surety on the committee's bond. In 1932 the committee invested $5,951.92 of the moneys received from the United States Veterans' Administration in three mortgage certificates issued and guaranteed by a title company. Two of the certificates, for $4,500 and $1,000, respectively, were in group mortgages with respect to which the title company had the power of substitution. The third certificate, for $500, was in a single mortgage. In 1935 the committee died. His administrator *c. t. a.* presented the deceased committee's final account for settlement. The special guardian questioned the validity of these investments and the Special Term held they were illegal and surcharged the deceased committee's estate with the amount thereof. The administrator *c. t. a.* and the surety appeal.

The Veterans' Act, which designates the committee as guardian, provides: " Every guardian shall invest the funds of the estate in the same kind of securities as those in which savings banks of this State are by law authorized to invest the money deposited therein, and the income derived therefrom, and in bonds and mortgages on unincumbered real property in this State worth fifty per centum more than the amount loaned thereon." (Civ. Prac. Act, § 1384-l.)

It will be observed that the act makes no reference to investments in shares or parts of mortgages or mortgage certificates. At the time the act was adopted the statutes governing the investments

of every fiduciary — executor, administrator, trustee, guardian and committee — expressly permitted him or it, subject to certain definite restrictions and conditions, to invest in parts or shares of mortgages or mortgage certificates. (Cf. Dec. Est. Law, § 111; Pers. Prop. Law, § 21; Dom. Rel. Law, § 85; Banking Law, § 188.*)

Appellants do not claim these investments were in securities in which savings banks are authorized to invest; nor could they, for savings banks are not authorized to invest in mortgage certificates, but only in whole mortgages subject to certain specified conditions. (Banking Law, § 239, subd. 6; § 241; *Matter of Title & Mtge. Guarantee Co. of Buffalo*, 246 App. Div. 435; affd., 270 N. Y. 629; *Matter of Doblin*, 152 Misc. 406; *Matter of Waxelbaum*, 156 id. 45.) Nor do appellants claim the investments were in bonds and mortgages on unincumbered real property worth fifty per cent more than the amount loaned thereon. In fact, such certificates are primarily the obligations of the guaranty company secured by bonds and mortgages. (*Matter of People [Title & Mtge. Guar. Co.]*, 264 N. Y. 69, 87, 88. Cf. *Title G. & T. Co.* v. *Mortgage Comm.*, 273 id. 415; *Matter of Title & Mortgage Guaranty Co.*, 275 id. 347.) Moreover, the language of the act indicates that the investment is to be limited to whole mortgages and that it is to be made only after an independent appraisal showing the requisite value of the property.

Appellants, in effect, contend that despite the failure of the Veterans' Act specifically to authorize investments in mortgage certificates, it should be construed to authorize such investments because it is *in pari materia* with the other statutes (as they then existed) governing investments by fiduciaries, and presumably the Legislature intended to grant to guardians of incompetent veterans investment powers coextensive with those granted to other fiduciaries.

A review of the statutes shows that in enacting the Veterans' Act it was the intention of the Legislature to preclude the guardian from investing in mortgage certificates and to confine his investments to the two classes therein specified.

Until 1918 the statutes (Dec. Est. Law, § 111; Pers. Prop. Law, § 21; Dom. Rel. Law, § 85; Banking Law, § 188) permitted all fiduciaries to make only these two types of investments. It was by virtue of an amendment added in that year (Laws of 1918, chap. 544) that they were authorized to invest in shares or parts of such bonds and mortgages, that is, in mortgage certificates, provided certain stated conditions are observed, namely, that the shares or parts

---

* Since repealed by Laws of 1937, chap. 619, § 3. See Banking Law, § 100-b, subd. 2.— [REP.

are all equal and co-ordinate; that the bond, mortgage, guaranty of payment, insurance policies, and other instruments and evidences of title, shall be held by a trust company or title guaranty corporation for the benefit of the fiduciary and all other persons interested therein; that a certificate setting forth that the corporation holds such instruments for that purpose be delivered to every person who becomes interested in the bond and mortgage, and that the corporation issuing such certificates shall keep a record thereof. Prior to this amendment " any investment of trust funds in a certificate of any fractional share, even [either] in a single mortgage or in a fixed group of mortgages, would unquestionably have been illegal." (*Matter of Stupack*, 274 N. Y. 198, 210.) This amendment relates to parts or shares of a mortgage held, not by the fiduciary, but by another, who issues and sells certificates, the payment of which is guaranteed. It has no relation to *mortgage participations*, where the mortgage is held by the fiduciary in his or its own name and the fiduciary allocates participating interests therein among the various trusts administered by him or it. These two types of investment are not to be confused. Even before 1918 a fiduciary's investment in mortgage participations, as distinguished from mortgage certificates, had received judicial sanction (*Matter of Union Trust Co.* [*Hoffman Estate*], 219 N. Y. 514), and such investments by corporate fiduciaries were expressly regulated by statute. (Laws of 1917, chap. 385, amending Banking Law, § 188.) Here we are not concerned with this type of investment, but only with investments in guaranteed mortgage certificates. During this period the authority of savings banks with respect to investment in mortgages was not enlarged. Savings banks were then and still are restricted to " Bonds and mortgages on unincumbered real property situated in this State, to the extent of sixty per centum of the appraised value thereof." (Banking Law, § 239, subd. 6.)

Prior to the adoption of the Veterans' Act, the estates of incompetent veterans were administered under the same statute that controlled the administration of estates of incompetents generally (Civ. Prac. Act, art. 81, §§ 1356–1384), and a committee's investment of an incompetent's funds was controlled by the statutes applicable to other fiduciaries. (Dec. Est. Law, § 111; Pers. Prop. Law, § 21.)

In 1928 the National Conference of Commissioners on Uniform State Laws promulgated a " Uniform Veterans' Guardianship Act." (9 U. L. A. 411 *et seq.*) With respect to the investment powers of the guardian, the Uniform Act (§ 12) provides that " Every guardian shall invest the funds of the estate in such manner or in such securi-

ties, in which the guardian has no interest, as allowed by law or approved by the court." Although our Legislature in 1929 adopted the Uniform Act substantially as recommended, it eliminated section 12 thereof and substituted therefor the provision that the guardian shall invest funds in the same securities in which savings banks may invest, and in bonds and mortgages on unincumbered real property worth fifty per cent more than the amount loaned thereon. (Civ. Prac. Act, § 1384-l.)

The Veterans' Act discloses a definite and unequivocal legislative intent to confine the investments of the guardian of an incompetent veteran to the two classes mentioned and to exclude the third class, that is, investment in mortgage certificates. When the Legislature adopted the Veterans' Act it must have been cognizant of the existing statutes which expressly empowered all fiduciaries, including the committee of an incompetent, to invest in mortgage certificates. (Dec. Est. Law, § 111; Pers. Prop. Law, § 21; Dom. Rel. Law, § 85; Banking Law, § 188.) Had the Legislature intended to give to the guardian of an incompetent veteran the same authority to invest in mortgage certificates, or to vest the court with power to determine the character of the investment, it doubtless would have incorporated in the Veterans' Act section 12 of the Uniform Act or the provisions of the existing statutes. The Legislature, however, provided that " Every guardian shall invest the funds of the estate " in the two classes specified. We have held, as to the character of the investments, that the direction is mandatory. (*Matter of Hotaling*, 250 App. Div. 489.)

An analysis of the act shows the Legislature intended to set up a complete new statutory scheme for the benefit of war veterans. The act is restricted to moneys payable by the United States Veterans' Administration to its wards or beneficiaries. The fiduciary is designated as guardian. (§ 1384-a.) The act expressly provides it shall "supersede any inconsistent provision of law relating to incompetents or infants." (Civ. Prac. Act, § 1384-b.) The incompetency of the ward is determined *prima facie* by the rating of the administration in accordance with its regulations. (§ 1384-f.) In addition to providing what investments the guardian shall make (§ 1384-l) the act specifically sets forth other provisions regulating the appointment, the accounts and the conduct of the guardian and his removal, and specifically prescribes the compensation to which he shall be entitled. (§§ 1384-d–1384-m.) The act is complete in itself except that in certain sections (1384-d, 1384-g, 1384-h, 1384-i and 1384-m) there are incorporated, by reference, appropriate sections of the Civil Practice Act, Surrogate's Court Act and other

statutes relating to procedural matters. It also provides that it " shall be construed liberally to secure the beneficial intents and purposes thereof " (§ 1384-q). It " shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those States which enact it " (§ 1384-r); and " The invalidity of any portion of this article shall not affect the validity of any other portion thereof " (§ 1384-s).

Therefore, it is clear the purpose of the Uniform Veterans' Guardianship Act and of our Veterans' Act, which is based on it, was to place war veterans in a class by themselves and to accord them special consideration. Otherwise, there would be no need, at least in this State, for the enactment of new legislation. In other words, the Legislature, out of its solicitude for war veteran incompetents, has seen fit to classify them separately and treat them differently from all other incompetents. It has made them *sui generis*. Indeed, it has been expressly held that our Veterans' Act, with certain immaterial exceptions, " supersedes * * * other provisions of law in respect of incompetents." (*Matter of Erlandsen*, 265 N. Y. 155, 157.) Other States have likewise adopted the Uniform Act, either *in toto* or in substance (9 U. L. A. 412), and have thus given recognition to incompetent veterans as a special class deserving of special consideration. (*White* v. *White*, 230 Ala. 641; 162 So. 368; *Hines* v. *Northrup*, 142 Kan. 608; 50 P. [2d] 986.)

To hold the Legislature intended to permit guardians of incompetent veterans to invest in mortgage certificates is to annul its deliberate action and to rewrite its enactment. Moreover, if the Veterans' Act be construed to permit investments in guaranteed mortgage certificates, then we have this anomaly: while other fiduciaries were authorized to make such investments only under definite prescribed conditions and restrictions, the guardian of a veteran incompetent would be permitted to make such investments without regard to any conditions or restrictions.

It also should be noted that the Legislature finally prohibited fiduciaries from investing in either mortgage participations or mortgage certificates. (Laws of 1937, chaps. 144 and 895; Laws of 1936, chap. 898.) Although the Legislature amended section 1384-l of the Veterans' Act by permitting the guardian to deposit the funds in a savings bank, it made no other change in his investment powers. (Laws of 1937, chap. 895.) The reason is obvious: it was unnecessary. Under the Veterans' Act guardians never possessed the power to invest in mortgage certificates.

Appellants argue that in 1929, when the safety of the mortgage certificates was not questioned, there was no reason why the Legislature should place guardians of incompetent veterans in a special

class and refuse to permit them to invest in such certificates when other fiduciaries were permitted so to do. But it is not for the courts to judge the wisdom of the Legislature or the effect of legislation. Nor are the courts concerned with the reason which prompted the Legislature to make a distinction between one class and another. (*Matter of Flint*, 240 App. Div. 217, 225; affd., 266 N. Y. 607.) " While the courts may interpret doubtful or obscure phrases and imperfect language in a statute so as to give effect to the presumed intention of the Legislature, and to carry out what appears to be the general policy of the law, they cannot, by construction, cure a *casus omissus*, however just and desirable it may be, to supply the omitted provision." (*McKuskie* v. *Hendrickson*, 128 N. Y. 555, 558.)

Appellants also argue that, in any event, the Veterans' Act should be deemed to permit investment in mortgage certificates because that is the practical construction given to it by guardians, the Veterans' Administration and the courts. It is true that the construction placed upon a statute by government officials, the courts and the public generally is entitled to great weight in determining its meaning. Nevertheless, that " doctrine is never applied unless the door is opened by an ambiguity, which is the foundation of the principle upon which the doctrine is founded." (*City of New York* v. *New York City R. Co.*, 193 N. Y. 543, 550.) Here the language of the act is unequivocal and its meaning clear.

Appellants rely on *Matter of Stupack* (*supra*). There the court held that a fiduciary (a general guardian but not of an incompetent veteran), by virtue of his statutory authority to invest in guaranteed mortgage certificates, may not be surcharged for investing in such certificates in " group " mortgages where the title company retained a right to substitute other mortgages held by it. The court based its decision on the fact that for many years the administrative officers of the State and the general public had construed the statute to permit such investments. But neither that case nor the theory on which it was decided is controlling here. There the statute was ambiguous. While it expressly permitted investments in parts or shares of mortgages, it was not clear whether the Legislature intended to permit investments in parts or shares of group mortgages where the title company reserved the right of substitution.

As the committee invested the funds of the incompetent veteran in securities other than those of the permitted classes, his estate must be surcharged even though his good faith in making the investments is not questioned.

The order, in so far as appealed from, should be affirmed, with costs to the special guardian, payable out of the estate.

Present — LAZANSKY, P. J., HAGARTY, DAVIS, JOHNSTON and CLOSE, JJ.

Order confirming report of official referee and surcharging committee unanimously affirmed, in so far as an appeal is taken, with costs to the special guardian, payable out of the estate.