In the Matter of the Estate of FREDERICK S. EASTON, Deceased.

Surrogate's Court, Lewis County, June 12, 1942.

*Ferris, Burgess, Hughes & Dorrance*, for the trustee.

*Johnson D. McMahon*, for Frederick S. Easton, Jr., objector and life beneficiary.

*Harry W. Cox*, special guardian.

MORAN, S. The trustee having voluntarily filed its account as trustee for Frederick S. Easton, Jr., and three objections having been filed to said account, namely, (1) that the trustee was negligent in failing to sell the 150 shares of stock of the Utica Trust and

Deposit Company within a reasonable time; (2) to the investments made in mortgage participation certificates by the trustee; (3) to the charge for legal services of the attorneys for the trustee on the accounting, known as objection No. 3. It is my understanding that objection No. 3 was withdrawn by counsel for the objector.

The decedent died on May 17, 1929. His will was duly admitted to probate in the Surrogate's Court of Lewis county on the 25th day of May, 1929. His daughter, Grace Easton Scofield, was named the sole executrix of his will. The Utica Trust and Deposit Company of Utica, New York, of which the present trustee is a successor banking institution, was named the trustee for the various trusts created by the will.

The will of the decedent provided: " I hereby authorize and empower my said trustee to receive and hold as a part of the trust funds and trusts, set up. or created by said last Will and Testament, any and all securities owned or possessed by me at the time of my death, whether such securities be legal investments for trust funds or otherwise. And I further authorize and empower my said trustee, from time to time, in its discretion to invest and reinvest said trust funds and property (other than the specific securities held by me at the time of my death) *only* in such securities as are authorized by law for the investment of funds of savings banks doing business within the State of New York."

This decedent was a banker by profession, president of the Black River National Bank of Lowville, New York, for a great many years; one of the founders, a director and later a vice-president of the Utica Trust and Deposit Company of Utica, New York.

On August 7, 1929, the executrix of the estate of the decedent turned over cash and securities to the trustee in the amount of $100,000 for this trust. Among the securities turned over and received by the trustee for this trust were 150 shares of stock of the Utica Trust and Deposit Company, accepted by the trustee at a value of $7,200, or $48 a share. In October, 1929, panic and depression occurred. In 1930 two private banks of the city of Utica were closed and the Utica Trust and Deposit Company, then having a branch in East Utica, was subjected to a severe withdrawal of funds. This naturally affected the bank itself. These withdrawals by depositors, together with the severe decrease in the portfolios of the Utica Trust and Deposit Company, resulted in the change of the financial structure of the trustee bank and its eventual merger with other banks into the present trustee banking institution. As a result of these financial losses and mergers, the stock of the Utica Trust and Deposit Company became worthless and the objector bases his objection No. 1 on the holding of this security

by the trustee until it became of no value. On December 19, 1930, the stock of this company was reduced from 50,000 shares, par value $20 each, to 10,000 shares of the par value of $20 each, and the 150 shares in this trust were reduced to 30 shares. After changing the capital structure as aforesaid, the capital stock of the company was increased from $200,000 to $500,000 and the number of shares was increased from 10,000 to 25,000. The right to subscribe for such additional 15,000 shares was offered the stockholders of record in proportion to their respective holdings at the price of $40 per share, but the company, as trustee, did not exercise any rights to purchase additional shares for this trust. On November 14, 1931, the Utica Trust and Deposit Company and the Citizens Trust Company of Utica were merged into a bank known as the First Bank and Trust Company of Utica and the name of the merged bank was changed from First Bank and Trust Company of Utica to First Citizens Bank and Trust Company of Utica. On its merger the stock of the Utica Trust and Deposit Company was adjudged worthless and the assets of the Utica Trust and Deposit Company were delivered to the merged bank without consideration. As a result of the merger the trustee herein, on November fourteenth, wrote off as worthless the thirty shares of stock of the Utica Trust and Deposit Company carried in this trust. Between the date of the delivery of the stock to the trustee by the executor and the date of the merger, November 14, 1931, there were only four sales of stock of this company, exclusive of the new stock sold to old stockholders. Two of the sales were at $50 per share, one at $47.50 and one at $45.

I dismiss objection No. 1, and hold the trustee not liable for the loss of this security. The specific direction of the will authorized the trustee to hold securities owned by him at the time of his death. The decedent was one of the founders of this banking institution, versed in the banking business; in addition to his experiences in the Utica Trust and Deposit Company he had a great many years' experience as a banker in Lewis county. The executrix of his estate was his own daughter. She had turned over to the trustee not only in this trust, but in trusts in which she was personally interested, stock of the trustee bank. The decedent was personally acquainted with the officers and directors of this institution. A great many banking institutions throughout this nation were practically wiped out by the depression. Bank directors and officers were fighting for their lives, their institutions and their stockholders to correct this catastrophe. Truly, the directors of this institution could see the value of the stock of the institution depreciating. To hold negligence under such circumstances seems to me futile.

A trustee should not be held liable for unfortunate results so long as he acts honestly, with ordinary prudence and within the limits of his trust. (*Matter of Clark*, 257 N. Y. 132, 137; *Matter of Balfe*, 152 Misc. 739.)

The decedent, a man well versed in investments and securities, specifically limited the trustee of his estate in the making of any new investments other than the securities held by him at the time of his death, to those in which savings banks of the State of New York were entitled to invest. No one can say that this decedent did not realize the specific restrictions he was placing upon his trustee. I am not unmindful of the period during which it appeared to be legal for ordinary trusts to carry investments of participating mortgages and the fact that our Legislature found that such conduct and permission were errors and its action in changing the Decedent Estate Law, the Personal Property Law and section 100-b of the Banking Law. Nor am I unmindful of the decision of Surrogate FOLEY in *Matter of Doblin* (152 Misc. 406). The history of investments in guaranteed mortgage certificates and such investments is discussed by Judge LEHMAN in *Matter of Stupack* (274 N. Y. 198). I can find no case specifically holding, outside of the *Doblin* case, that a savings bank is authorized to invest in participating mortgage certificates. In the amendments the Legislature seems to have carefully avoided the original granting of this kind of investment to savings banks, and I hold that the investment of trust funds by the trustee for this trust in participating mortgage certificates is illegal.

The able attorneys for the trustee urge that the burden of proof is upon the objector to establish illegal or negligent acts of the trustee. In the account filed there is specifically set forth in Schedule " B " receipts, Utica Trust and Deposit Company mortgage participation certificates, and sets forth several numbers of these certificates. Schedule " I " of its account lists securities on hand belonging to the trust, which include nine participating certificate mortgages together with one declaration of trust which is evidently property turned over as a result of a defaulted participating mortgage. To the writer this seems proof unto itself.

The mortgages on which these participating certificates are based are all mortgages taken several years before the depression, and held by the trustee itself.

It is common sense that the values of real property materially changed over this period of time. The court particularly asked that evidence of value of the properties involved be submitted. The evidence submitted is assessed value. The stipulated evidence is assessed value as of the time the participating certificate was

taken into the trust. The stipulated evidence further is that the equalization board of the county of Oneida, where these properties are located, determined that assessments were at sixty-four per cent of true market value. If such is the case, the Gordon, Parkhurst, Luggero, Kearney, Risinger and Rycraft mortgages are in an amount exceeding investments for savings banks. There is no other evidence before this court upon which to base values. Therefore, I cannot take anything except the assessed valuation. These six mortgages are illegal investments on these grounds.

Nowhere is there anything on the part of the trustee to show that it complied with paragraph (e) of subdivision 6 of section 235 of the Banking Law, wherein " no investment in any bond and mortgage shall be made  *  *  *  except upon the written and signed certificate of two or more persons appointed by the board of trustees stating that they have examined the real estate described in such mortgage and that in their judgment it affords adequate security for such investment."° A banking institution holding itself out to the public as created under the law to act as executor and trustee in estates certainly must be expected to use as high a degree of care in the handling of a trust as the most experienced individual, and this trustee, in purchasing for this trust, from itself, participating certificates in mortgages, under which trust it is specifically limited to savings banks securities for investment, must comply with the terms of the will; and if it has invested in securities not legal for savings banks in the State of New York, it is liable to the trust for the loss incurred. Therefore, objection No. 2 to the account of the trustee is allowed, and the trustee is directed to take up these participation mortgage certificates in this trust and put back into the trust cash in an amount equal to the unpaid face amount of the certificates.

Let an order be entered accordingly, terms of which will be settled by the court if the attorneys for the respective parties are unable to agree.