In the Matter of the Estate of HORACE LOOMIS, Deceased. GEORGE SPICER, JR., as Administrator of the Estate of GEORGE SPICER, SR., Deceased, et al., Appellants; EMMA L. BISHOP et al., Respondents.

Second Department, April 9, 1945.

*Irving B. Lydecker* for George Spicer, Jr., as administrator, etc., appellant.

*David V. Cahill* for Margaret Winship, as executrix, etc., appellant.

*Thomas E. White* and *R. Elliott Davis* for Fidelity and Deposit Company of Maryland, appellant.

*John B. J. Gerety* for Emma Loomis Bishop and others, respondents.

*Herbert D. Lent, Jr.,* and *Odell D. Tompkins* for First National Bank of Mount.Vernon, N. Y., respondent.

*Per Curiam.* The decedent died on March 8, 1925, leaving a last will and testament appointing George Spicer, Sr., and Gardner G. Winship, as executors and cotrustees of a trust created by his will for the benefit of his son, Romeo Felix Chabert Loomis, for his life with the remainder over to the testator's other children then surviving. The trustees were directed to invest upon such security as savings banks are permitted to invest " upon under the laws of the State of

New York." The executors duly qualified as such and in May, 1926, their account as executors was judicially settled and they thereupon qualified and entered upon their duties as trustees by filing a bond in the sum of $25,000, executed by the Fidelity and Deposit Company of Maryland as surety. It appears that prior to their qualification as trustees, the executors purchased a $4,500 mortgage certificate from the Lawyers Westchester Mortgage and Title Company. After their qualification as trustees they turned over to themselves as part of the trust estate this $4,500 mortgage certificate, another certificate not involved here, and the balance of the estate in cash. Thereafter, the trustees purchased, with part of the cash thus received by them, an additional $13,000 guaranteed mortgage certificate from the same company. These mortgage certificates provided that the company might cancel the certificate at any time on written notice and payment of the amount due for principal and interest. While the mortgage certificates might have been legal investments for the executors, they were not legal investments by the trustees under the terms of the will (*Matter of Easton,* 178 Misc. 611, affd. 266 App. Div. 713, motion for leave to appeal denied 291 N. Y. 828; *Matter of Doblin,* 152 Misc. 406; *Matter of Hoyt,* 268 App. Div. 1002) and if any loss has resulted to the estate the trustees may be surcharged because of the breach of their duty as trustees. (*Matter of Goebel,* 177 Misc. 553.) The cotrustee Winship was at the time and had been for many years prior and subsequent thereto cashier of the First National Bank and Trust Company of Mount Vernon. On June 30, 1927, both cotrustees petitioned the Surrogate's Court for an order, pursuant to section 106 of the Surrogate's Court Act, to reduce the trustees' bond from $25,000 to $7,500, on condition that they deposit the two mortgage certificates with the First National Bank of Mount Vernon as joint depositary. The attorney for the bank represented the cotrustees on this petition and the bank consented to its designation and appointment. On this petition and consent an ex parte order was made on July 2, 1927, designating the bank as a joint depositary of the two mortgage certificates and reducing the bond to $7,500. The order provided that the certificates so deposited could not be withdrawn without an order of the Surrogate's Court. On January 18, 1928, the cotrustee Winship, at the request of the mortgage company, forwarded the $13,000 certificate to that company with a request that a new certificate be sent directly to him. This was done without any order of the Surrogate's

Court permitting the release of the security. A certificate for a like amount in another series was issued. In May, 1929, by similar action on the part of Winship, the $4,500 certificate was surrendered for redemption, and a certificate in another series for a like amount was issued and sent to the bank. It is conceded that at that time the mortgage company was solvent and the certificates were worth par. On November 29, 1930, the cotrustee Spicer died. In May, 1932, the certificate for $4,500 was called by the mortgage company because of the foreclosure of one of the mortgages in the series. This certificate was forwarded directly to the title company by the assistant cashier of the bank, with a request that a new certificate for like amount be forwarded to the bank, and this was done. That certificate remained in the trust at the time of the accounting. In July, 1932, the $13,000 certificate was called by the mortgage company for the purpose of foreclosure and on September 14, 1932, a new certificate was issued in another series and that certificate remained in the trust. On December 6, 1938, the cotrustee Winship died, and on February 5, 1939, the life beneficiary died and the trust terminated. Thereafter the representatives of the deceased cotrustees petitioned the court for a judicial settlement of their accounts as such trustees. In addition to the remaindermen of the trust, the surety on the trustees' bond and the respondent bank were cited. The citation contained a request for instructions as to whether or not the bank should be surcharged for certain losses occasioned by reason of their releasing, without an order of the Surrogate's Court, the mortgage certificates placed in their custody. The bank appeared generally and answered, admitting that the certificates had been withdrawn and surrendered without an order of the Surrogate's Court. The answer also contained other defenses that need not be considered. The Surrogate's Court held that the trustees violated the terms of the trust; that the estates of both cotrustees were liable for the full surcharge; denied them commissions; declared that the order reducing the trustees' bond from $25,000 to $7,500 was invalid; and dismissed the objections against the bank without prejudice. From the decree entered pursuant to this decision, the surety upon the official bond of the trustees and the representatives of the cotrustees appeal.

It is conceded by the remaindermen and the bank that the certificates were worth par at the time of each redemption and, while the investment was illegal, no loss was sustained by the trust at the time of cotrustee Spicer's death. His estate may not be held liable for the acts of his cotrustee, Winship, after

Spicer's death. (*Wilmerding* v. *McKesson et al.*, 103 N. Y. 329, 339.) It follows that the decree will have to be modified by eliminating therefrom the surcharge imposed upon Spicer's estate.

Under the practice adopted in this case, it is clear that the Surrogate's Court had jurisdiction of the respondent bank in this proceeding. Under section 40 of the Surrogate's Court Act, the court possessed full power to make a complete disposition by its decree. (*Matter of Raymond* v. *Davis*, 248 N. Y. 67.) The order of the Surrogate's Court made the bank joint depositary of the securities involved and directed that the securities should remain on deposit in the bank at all times, withdrawable only upon the order of the court. This was pursuant to the terms of section 106 of the Surrogate's Court Act. This section further provides that an order of withdrawal can be made only when an additional bond is given. The custodian was the only one authorized to collect or receive either the principal or interest or any payment on account of these securities (*Ditmas* v. *McKane*, 92 App. Div. 344) and could not surrender the securities or pay over the moneys to the fiduciary without first obtaining permission from the court. (*Matter of Butman*, 130 App. Div. 156.)

The bank alleges in its answer that when the certificates were surrendered to the mortgage company the certificates were paid. The fact that the proceeds were immediately invested in other certificates does not exculpate the bank. Nor can the acts performed by Winship, as an officer of the bank, be divorced from his acts in his capacity as trustee. We find that Winship's actions were of a dual nature and in a dual capacity, whereby he made himself liable as trustee and the bank liable for the breach of its duty. The bank may not be relieved because its system permitted Winship to obtain possession of these certificates without the knowledge of any other officer of the bank.

The decree, therefore, must be further modified by holding that the bank is liable, together with Winship, as trustee, for the full amount of the surcharge.

We are of the opinion that the order reducing the obligation of the surety on the trustees' bond was valid, and the decree should be further modified accordingly. It is claimed that this order was invalid because of failure to serve notice upon either the life beneficiary or the remaindermen. Section 106 of the Surrogate's Court Act contains no direction requiring notice to be given. Under the provisions of that section the trustee is deprived of all individual control over the securities, and

joint control in the bank is in substitution for the bond. There appears no logical reason why persons interested in the estate should receive notice. The purpose of the section is to lessen the cost of administering trust estates. It is for the benefit of the *cestuis que trustent* that the provisions of section 106 of the Surrogate's Court Act were invoked It is argued that this section applies only to original bonds. But this section was in effect long before the original bond was filed, and any bond filed was necessarily subject to its provisions. In any event the beneficiaries in seeking to hold the bank liable seem to have ratified the order reducing the bond.

The decree should be modified on the law, as indicated herein, and as so modified should be affirmed, without costs, and matter remitted to the Surrogate's Court to enter a decree in conformity with this opinion.

CLOSE, P. J., HAGARTY, CARSWELL, ADEL and ALDRICH, JJ., concur.

Decree of the Westchester County Surrogate's Court modified on the law (1) by eliminating therefrom the surcharge imposed on the estate of George Spicer, Sr.; (2) by determining that the bank is liable for violating the order of July 2, 1927, together with Gardner G. Winship, as trustee, for the full amount of the surcharge; and (3) by determining that the obligation of the surety on the trustees' bond was validly reduced by the order of July 2, 1927, from $25,000 to $7,500. As thus modified the decree is unanimously affirmed, without costs, and the matter is remitted to the Surrogate's Court for the entry of a decree accordingly.