In the Matter of the Accounting of MARGARET MORAN, as Committee of the Estate of GEORGE SMITH, an Incompetent Person, Appellant.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant; FRANK T. HINES, as Administrator of VETERANS' AFFAIRS, et al., Respondents.

Argued November 21, 1938; decided January 10, 1939.

*C. Edward Scotti* and *S. Bertram Friedman* for Margaret Moran, as committee, appellant. Investments made by the committee of an incompetent World war veteran in guaranteed mortgage participation certificates are legal and proper. (*Matter of Stupack,* 274 N. Y. 198; *Sporza* v. *German Sav. Bank,* 192 N. Y. 8; *Matter of Andrews,* 192 N. Y. 514; *Hughes* v. *Jones,* 116 N. Y. 67; *Butler* v. *Jarvis,* 51 Hun, 248; *King* v. *Talbot,* 40 N. Y. 76; *Crabb* v. *Young,* 92 N. Y. 56; *Matter of McDonald,* 162 Misc. Rep. 847; *Matter of Adriance,* 145 Misc. Rep. 345; *Matter of Blake,* 146 Misc. Rep. 780; *Seligman* v. *Friedlander,* 199 N. Y. 373; *Delafield* v. *Barret,* 270 N. Y. 43.) The investments were made under the authority of court orders and with the knowledge, consent and acquiescence of the Veterans' Administration. (*Matter of Levy* [*Traulko*], 253 N. Y. 566; *Crabb* v. *Young,* 92 N. Y. 56; *Mills* v. *Bluestein,* 275 N. Y. 317.)

*C. O. Donahue* and *William J. McArthur* for United States Fidelity and Guaranty Company, appellant. The investments in the certificates were authorized investments in bonds and mortgages. (*Matter of Union Trust Co.* [*Hoffman*], 219 N. Y. 514; *Barry* v. *Lambert,* 98 N. Y. 300.) The committee exercised reasonable care and prudence in purchasing the mortgage certificates. She

should not be surcharged for their purchase. (*Mills* v. *Bluestein*, 275 N. Y. 317.)

*William A. Gillcrist* and *James A. Clark* for Frank T. Hines, as administrator of Veterans' Affairs, respondent. It is the duty of a committee to invest the funds of the estate of an incompetent war veteran in securities authorized by law and she must exercise prudence and fidelity in the selection thereof within the permissible class of investments. (*King* v. *Talbot*, 40 N. Y. 76; *Matter of McCafferty*, 147 Misc. Rep. 179; *Matter of Farina*, 253 App. Div. 510; *Costello* v. *Costello*, 209 N. Y. 252.) Investments by a committee of an incompetent war veteran in the type of investments here involved are not permitted by section 1384-l of the Civil Practice Act. (*N. Y. C. & H. R. R. R. Co.* v. *Williams*, 199 N. Y. 108; *Matter of Erlandsen*, 265 N. Y. 155; *Delafield* v. *Barret*, 270 N. Y. 43.) Investments by a committee of an incompetent war veteran subsequent to July 1, 1929, in the type of paper here involved are not investments in " bonds and mortgages " within the purview of section 1384-l of the Civil Practice Act. (*Matter of Farina*, 253 App. Div. 510.) It rests entirely with the committee to safeguard the estate and to see that precise disposition of the funds of the estate are made and that duty reposes in the committee by law. (*Matter of Hotaling*, 294 N. Y. Supp. 953; *Matter of Dillworth* v. *Steadman*, 265 N. W. Rep. 596; *White* v. *White*, 162 So. Rep. 368; *Louisville & Nashville R. R. Co.* v. *United States*, 282 U. S. 740.) Due and unpaid real property taxes being a prior lien upon the property renders the investment in each instance illegal, and knowledge of the existence of these liens and incumbrances must be imputed to the committee at the time of the purchase. (*Real Estate Corp.* v. *Harper*, 174 N. Y. 123; *Matter of Hotaling*, 294 N. Y. Supp. 953.)

*Otto A. Rebhun,* as special guardian of George Smith, an incompetent person, respondent. The participating mortgage certificates purchased by the committee were not proper, suitable or legal investments made pursuant to court orders for the incompetent war veteran's trust funds, within the mandatory requirements of section 1384-1 of the Civil Practice Act and the court orders obtained therefor. (*Delafield* v. *Barret,* 270 N. Y. 43: *National Surety Co.* v. *Manhattan Mortgage Co.,* 185 App. Div. 733; *Matter of Dalsimer,* 251 App. Div. 385; 277 N. Y. 717; *Costello* v. *Costello,* 209 N. Y. 252; *Matter of Muller,* 155 Misc. Rep. 748; *Lewis* v. *Petersen,* 241 N. Y. 268; *Real Estate Corp.* v. *Harper,* 174 N. Y. 123; *Mills* v. *Bluestein,* 275 N. Y. 317; *Matter of Farina,* 253 App. Div. 510.) Fiduciaries who carelessly, negligently, illegally or improperly invest trust funds in securities contrary to the statutes governing same should be surcharged when loss occurs. (*Delafield* v. *Barret,* 270 N. Y. 43; *Matter of Jacobs,* 152 Misc. Rep. 139; *Matter of Dalsimer,* 251 App. Div. 385; 277 N. Y. 717.)

LEHMAN, J. Margaret Moran was appointed in 1922 the committee of the estate of her brother George Smith, an incompetent, honorably discharged war veteran. In the course of her administration she received monthly disability compensation payments from the United States Veterans Bureau. In September, 1929, she invested the sum of $2,500 in a guaranteed certificate of participation in a mortgage upon improved real property in the borough of Manhattan, New York city. In 1931 she invested the sum of $1,000 in a similar certificate of participation in a mortgage upon real property in the borough of Queens. The committee has voluntarily petitioned the Supreme Court for leave to resign and for the settlement of her final account. Objections were filed to the investment by the committee of moneys received from the Veterans Bureau in these certificates of participation in

mortgages, on the ground that such investments are not authorized by statute. The objections were overruled at Special Term but the Appellate Division has held that these investments are illegal and has directed that the committee be surcharged in the amount of $3,500.

"Proceedings relative to incompetent veterans and infant wards of the United States Veterans Bureau" are regulated by the provisions of article 81-A of the Civil Practice Act, added by chapter 340 of the Laws of 1929, in effect July 1, 1929. "Every guardian shall invest the funds of the estate in the same kind of securities as those in which savings banks of this state are by law authorized to invest the money deposited therein, and the income derived therefrom, and in bonds and mortgages on unincumbered real property in this state worth fifty per centum more than the amount loaned thereon." (Art. 81-A, § 1384-l.) In the statute the Legislature has specified "those types of investments which to the Legislature seem to afford a maximum of safety." If a fiduciary "invests in securities other than those of the permitted class, he cannot set up the statute as supporting either his good judgment or good faith. If loss results he must bear the loss." (*Delafield* v. *Barret*, 270 N. Y. 43, 48, 49.) Upon this appeal we must determine whether the "permitted class" includes investments in certificates of participation in bonds and mortgages as well as investments in whole "bonds and mortgages."

The provisions of article 81-A are generally in accordance with the "Uniform Veterans' Guardianship Act" proposed by the National Conference of Commissioners on Uniform State Laws. In section 1384-l the Legislature, however, departed from the formula proposed by the Conference, which read: "Every guardian shall invest the funds of the estate in such manner or in such securities, in which the guardian has no interest, as allowed by law or approved by the court." (See 1928 Handbook of the National Conference of Commissioners on Uniform State

Laws, p. 538.) The Legislature defined specifically the " permitted class " of investments, instead of placing upon a committee the burden of searching through the statute books and judicial decisions of the State in order to determine what investments are " allowed by law." Its definition is binding upon the Supreme Court and upon a committee appointed by the court. In formulating that definition the Legislature adopted the language of section 21 of the Personal Property Law (Cons. Laws, ch. 41) and of section 111 of the Decedent Estate Law (Cons. Laws, ch. 13), in its original form prior to the amendment of these statutes by chapter 544 of the Laws of 1918. By that amendment, fiduciaries authorized to invest trust funds in bonds and mortgages on unincumbered real property in this State worth fifty per centum more than the amount loaned thereon, received for the first time *in express terms* authority to invest trust funds also " in shares or parts of such bonds and mortgages." No such authority is conferred in express terms upon a committee of an incompetent veteran by section 1384-1 of the Civil Practice Act. The question is whether it should be read into the statute by implication.

This court held in *Matter of Union Trust Co.* (219 N. Y. 514 [1916]) that a trustee even before the amendment of the statute in 1918 had power to combine several trust funds in an investment in a single bond and mortgage, held by the trustee *in its own name,* provided that the transaction was carried out in manner there described, which would adequately protect the rights and interests of the beneficiary of the trust fund. We did not there hold that a trustee might purchase a certificate of participation in a bond and mortgage held and controlled by another person or trust company. Such an investment would have violated long-established rules governing the form of investments by trustees, and before the amendment of 1918 no trustee could safely disregard these rules. A court would not have been justified in

reading into the statute by implication a power to invest trust funds in parts of shares of bonds and mortgages when such investment was not in accord with established practice or established rules.

The statute of 1918 changed not only the rule but the practice of investment by trustees. Guaranteed certificates of participation in bonds and mortgages became a very usual form of investment. Undoubtedly investments in such certificates were generally regarded as "mortgage investments." The Legislature in statutory definitions of the words "bonds and mortgages" or "mortgage investments" has in unambiguous language indicated that at least for some purposes and in some statutes these terms are intended to include shares, parts or interests in bonds and mortgages. (Cf. General Construction Law [Cons. Laws, ch. 22], § 25-b [added by Laws of 1933, ch. 317]; also an "Act to provide for the protection of holders of mortgage investments," popularly known as the Schackno Act [Laws of 1933, ch. 745, § 2], and the Mortgage Commission Act [Laws of 1935, ch. 19, art. 3, § 3].) The courts have recognized that in common speech investments in "bonds and mortgages" would include investments in parts or shares of such bonds and mortgages evidenced by certificates of participation. So the courts have held that the authority given by a testator in his will to a trustee to invest in mortgages includes, by plain implication, authority to invest in guaranteed mortgage participation certificates. (*Matter of Weinroth*, 254 App. Div. 733.) By critical examination of the language of the statute and comparison with other statutes, a narrower construction has been given, in the case we are now reviewing, to the language of section 1384-1 of the Civil Practice Act.

There is force in the argument that in 1929, when the Legislature defined the class of securities in which a committee of an incompetent veteran is permitted to invest trust funds, it would not have used the language

of the Personal Property Law in its original form before the amendment in 1918 if it had intended that the permitted class should include investments authorized for the first time by that amendment. On the other hand, we may not presume that in formulating a definition by which a committee should be guided, the Legislature intended to give to words a meaning which would become apparent only upon critical examination and by comparison with other statutes, nor may we presume that the Legislature intended to provide for incompetent veterans safeguards withheld from other incompetents and from infants and beneficiaries of trusts. We have said that the purpose of the statutes which regulate the investment of trust funds, even if not in mandatory form, " would seem to be to specify those types of investments which to the Legislature seem to afford a maximum of safety." Experience since 1929 has convinced the Legislature that certificates of participation in bonds and mortgages are not a type of investment for trust funds which affords a " maximum of safety," and by amendment to the Personal Property Law and the Decedent Estate Law, such investments are no longer permitted. They were expressly specified as investments permitted to trustees when the challenged investments were made in this case. A legislative intention to prohibit investment of the funds of *an incompetent veteran* in securities *expressly* specified in other statutes as a type of investment which affords a maximum of safety for funds held by other fiduciaries, including a committee of an incompetent other than a veteran, should be clearly expressed.

In determining whether the statute does prohibit such investments the court must consider whether " a fiduciary reading the statute with reasonable care would so understand." It must take into account the construction which officials, charged with the responsibility of advising or directing a committee, and which the general public

placed upon the statute prior to and at the time when the challenged investments were made. A construction of the statute which would exclude an investment in a part or share of a bond and mortgage from the category of permitted investments would be unreasonable if " careful fiduciaries and their legal advisers could not reasonably doubt that the language used by the Legislature in describing investments of trust funds which fiduciaries might lawfully make was intended to include " such investments. So we said in *Matter of Stupack* (274 N. Y. 198, 206, 213), and what we said there applies with perhaps even greater force in this case.

The United States Veterans Bureau or its successor is vested, under the statute, with broad powers of supervision of the administration of the estates of incompetent veterans. It exercised these powers vigilantly in this case. The investment in 1929 of the sum of $2,500 was made pursuant to an order signed by a justice of the Supreme Court which authorized the committee to invest that sum " in securities that are legal for trust funds, paying not less than $5\frac{1}{2}\%$." The application to the court and the *order* were prepared by the legal division of the Veterans' Administration, without charge, at the request of the committee. The investment of $1,000 in 1931 was made pursuant to a similar order, also prepared by the legal division of the Veterans' Administration. The particular certificates of participation in bonds and mortgages in New York and Queens counties were selected by the committee upon the advice of an attorney of the Veterans' Administration or of a representative of the American Legion to whom the attorney referred the committee and who was requested to assist the committee in the purchase of a legal investment proper for trust funds. Thus it appears without dispute that the legal division of the Veterans' Administration construed section 1384-1 in manner which would permit the committee to invest the funds of an incompetent veteran

in "securities legal for trust funds," and the Supreme Court adopted the same construction; yet when pursuant to the order of the court and the advice of all those to whom she might reasonably look for advice, the committee invested moneys in her hands in a certificate of participation in a bond and mortgage, it is said that she violated the plain mandate of the statute and wasted the estate of the incompetent by an investment not permitted to a committee of an incompetent veteran, though "legal for trust funds."

A court cannot authorize a committee to invest the moneys of an incompetent in securities not sanctioned by the statute, and a careless reading of the statute by counsel and by court cannot change the meaning of its language or enlarge its scope. None the less, a construction adopted consistently and not casually by the legal department of an official agency and by the courts, and which has been accepted without challenge over a period of years by the public, may not be lightly rejected as unreasonable. It indicates plainly what a fiduciary reading the statute with reasonable care would understand from its language, and that is the way in which the courts should construe a legislative definition intended to guide the conduct of fiduciaries. We are advised by counsel that for several years after article 81-A of the Civil Practice Act was adopted, justices of the Supreme Court in all parts of the State signed orders authorizing or approving investments by committees of incompetent veterans in securities "legal for trust funds" including certificates of participation in bonds and mortgages, and that for years the legal department of the Veterans' Administration prepared, or at least did not object to, such orders. We now know that such investments were unwise. The Legislature has acted upon this knowledge and has forbidden such investments in the future. Knowledge late gained cannot change retrospectively the reasonable and generally accepted construction of the

statute. So long as the Legislature expressly permitted the investment by other fiduciaries in certificates of participation of bonds and mortgages, the authority conferred by statute upon a committee of an incompetent to invest the funds in his care in " bonds and mortgages " included, by fair intendment, authority to invest in parts or shares of such bonds and mortgages, evidenced by certificates of participation in such bonds and mortgages.

The committee's investment is challenged in this case also on the ground that the mortgaged properties were incumbered by tax liens and were not worth fifty per centum more than the loans. Only a title search and an appraisal of the mortgaged premises would have disclosed such infirmities in the investment. A fiduciary may not escape liability for investments in securities of a .type not sanctioned by the statute, regardless of whether he used care and judgment in his choice. He acts at his peril when he disregards statutory limitations upon his power. (*Delafield* v. *Barret, supra.*) He may not, however, be charged with wrong and liability for consequent damage, when in spite of the exercise of care and prudence he fails to discover extraneous facts which render a particular investment — though of the type sanctioned by the statute — unsafe and improper for trust funds. In this case the committee appears to have used the care and prudence which a reasonably careful committee would, under the circumstances, have used. (*Mills* v. *Bluestein,* 275 N. Y. 317.)

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division, payable out of the estate of the incompetent.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur; RIPPEY, J., dissents on the ground that as the investment in parts of bonds and mortgages was illegal, advice cannot make it legal.

Ordered accordingly.