In the Matter of the Accounting of CENTRAL HANOVER BANK AND TRUST COMPANY, as Trustee under the Will of FREDERICK A. HOYT, Deceased.

CENTRAL HANOVER BANK AND TRUST COMPANY, Individually and as Trustee, Appellant; FREDERICKA H. HASLUP et al., Respondents.

Argued May 15, 1945; decided July 19, 1945.

*J. Quincy Hunsicker, 3rd., Hersey Eggington* and *Albert B. Maginnes* for appellant. I. The investments in mortgage participations, by appellant's taking a whole bond and mortgage in its own name for allocating shares of the investment to separate trusts and making such allocation of shares of such investments to the trust now in question, were in full compliance with the provisions of the will, conferring power to invest in " securities, expressly authorized " for savings banks. (*Matter of Union Trust Co. [Hoffman Estate]*, 219 N. Y. 514.) II. The statutory term " bonds and mortgages " (Banking Law, former § 239, subd. 6) includes parts or shares, as well as wholes, thereof. (*Chesterman et al.* v. *Eyland*, 81 N. Y. 398; *Barry* v. *Lambert*, 98 N. Y. 300; *Matter of Union Trust Co. [Hoffman Estate]*, 219 N. Y. 514; *Matter of Doblin*, 152 Misc. 406; *Matter of Ryan*, 291 N. Y. 376; *Matter of Flint*, 240 App. Div. 217, 266 N. Y. 607; *Matter of Smith*, 279 N. Y. 479; *Matter of Farina*, 279 N. Y. 780; *Matter of Weinroth*, 254 App. Div. 733; *Matter of Jones*, 161 Misc. 795; *Matter of Dalsimer*, 160 Misc. 906, 251 App. Div. 385; *Matter of Stupack*, 274 N. Y. 198.) III. The will should be construed in the light of the widespread usage and common understanding of a provision authorizing investment in securities permitted for savings banks, as entitling the fiduciary to invest in mortgage participations. (*Matter of Doblin*, 152 Misc. 406; *Matter of Stupack*, 274 N. Y. 198; *Matter*

of Smith, 279 N. Y. 479.) IV. Testator in confining his refer-
ence to the savings bank law to the " securities " authorized
by such law, and in appointing appellant, a trust company, as
his fiduciary, plainly intended that the manner and procedure
for the exercise of appellant's powers, including the manner of
exercising the power to invest in " bonds and mortgages ",
should be governed by the statutes regulating the exercise of
powers of trust companies and not by the statutes regulating
the exercise of powers of savings banks, literal compliance by
a trust company with the latter being impossible. (Matter of
Doelger, 254 App. Div. 178, 279 N. Y. 646; Matter of Farina,
253 App. Div. 511, 279 N. Y. 780; Central Hanover Bank and
Trust Company v. Brown, 30 N. Y. S. 2d 85; In re Gibson's
Will, 40 N. Y. S. 2d 727; Wilmerding v. McKesson et al., 103
N. Y. 329; Chesterman et al. v. Eyland, 81 N. Y. 398; Matter
of McCafferty, 147 Misc. 179; Croft v. Williams et al., 88 N. Y.
384; Matter of Mann, 147 Misc. 873; Reid v. Sprague, 72 N. Y.
457; Matter of Garvin, 256 N. Y. 518.) V. The surcharge respect-
ing the rubber company shares is predicated upon a plain mis-
take of fact and not upon unauthorized " retention ", the sole
ground of objection. It violates both (a) the express and the
effective testamentary exoneration of appellant from liability
for loss, incurred in good faith, and (b) the adjudicated right
of a fiduciary to participate in a consolidation, even if retention
of the new securities would be unauthorized, as long as the new
securities are sold within a reasonable time. (Matter of Garvin,
256 N. Y. 518; Matter of Clark, 136 Misc. 881, 232 App. Div.
781, 257 N. Y. 132; Matter of Cuddeback, 168 Misc. 698; In re
See's Estate, 38 N. Y. S. 2d 47; Crabb v. Young, 92 N. Y. 56;
Matter of Clark, 257 N. Y. 132; Matter of Kramer, 172 Misc.
598; In Re Olney's Estate, 20 N. Y. S. 2d 884; Chemical Bank
& Trust Co. v. Ott, 274 N. Y. 572; In the Matter, etc., of Estate
of Weston, 91 N. Y. 502; Matter of Clark, 257 N. Y. 132; Matter
of Parsons, 143 Misc. 368, 238 App. Div. 883; Matter of Horton,
166 Misc. 768.)

Jules G. Evens and Samuel Lawrence Brenglass for Fred-
ericka H. Haslup and another, respondents. I. Investment in
mortgage participations is not permitted under the provision
of the will restricting investments " only in securities, expressly

authorized ", for savings banks. (*Matter of Reid,* 170 App. Div. 631, 218 N. Y. 640; *Matter of London,* 104 Misc. 372, 187 App. Div. 952; *Roseboom* v. *Roseboom et al.,* 81 N. Y. 356; *Matter of Buechner,* 226 N. Y. 440; *Matter of Barrett,* 141 Misc. 637; *Matter of Riecke,* 165 Misc. 566; *Matter of Easton,* 178 Misc. 611, 266 App. Div. 713; *Matter of Ryan,* 291 N. Y. 376; *Matter of Dalsimer,* 160 Misc. 906, 251 App. Div. 385, 277 N. Y. 717; *Matter of Waxelbaum,* 156 Misc. 45; *Matter of Haydock,* 158 Misc. 404; *Matter of Goebel,* 177 Misc. 553; *Matter of Campbell,* 38 N. Y. S. 2d 827, 267 App. Div. 783.) II. Respondents are not estopped by any acquiescence in, or ratification of, the unauthorized investments in the mortgage participations. (*Adair et al.* v. *Brimmer et al.,* 74 N. Y. 539; *Meinhard* v. *Salmon,* 249 N. Y. 458; *Matter of Long Island Loan & Trust Co.,* 92 App. Div. 1, 179 N. Y. 520; *Matter of Young,* 249 App. Div. 495, 274 N. Y. 543.) III. The retention by appellant trustee of the common stock of the rubber company after the receipt by it of notice that the company would reorganize and consolidate with another corporation, constituted an investment in a stock not authorized by the will. (*Stark* v. *National City Bank,* 278 N. Y. 388; *Mertz* v. *Guaranty Trust Co.,* 247 N. Y. 137.)

*J. Hampden Dougherty,* special guardian, for Mary Hoyt and others, infants, and for others, respondents. I. Each of the real estate mortgages objected to was an improper investment because the appraisal requirements imposed as to savings bank mortgages were never complied with. Personal inspection and appraisal by appellant's trustees was requisite. (*Matter of Easton,* 178 Misc. 611, 266 App. Div. 713.) II. Valuation at the time of acquiring participations was essential. (*Matter of Dimond,* 163 Misc. 611; *Matter of Dalsimer,* 160 Misc. 906.) III. The wholly exceptional language of this will forbade investment of the trust fund in parts of any mortgages — even in parts of mortgages legal for savings banks. Participations were not expressly authorized by the Banking Law. IV. The Banking Law forbade appellant's procedure. V. As to alleged estoppel of beneficiaries, the law is *contra.* (*Matter of Doelger,* 254 App. Div. 178; *Adair et al.* v. *Brimmer et al.,* 74 N. Y. 539; *Matter of Haydock,* 158 Misc. 404; *Matter of Bannin,* 142 App. Div. 436.) VI. The retention clause of the will was inapplicable to the rubber stock transaction.

LOUGHRAN, J. In this proceeding for settlement of an intermediate account of a testamentary trustee, the Surrogate sustained objections that were filed by beneficiaries and surcharged the account accordingly. The Appellate Division affirmed.

The first surcharge is for the amount of losses which resulted from investments of the trust principal that were made in parts of bonds and mortgages. On this branch of the case the question is one of testamentary construction.

The will of the testator was probated in 1929. By ITEM SEVENTH thereof, he left three quarters of his residuary estate to the trustee. ITEM EIGHTH directed payment of the whole of the net income to the testator's only daughter during her life. ITEM NINTH gave a one-third remainder to the daughter's heirs and a two-ninths remainder to each of the three sons of the testator. ITEM ELEVENTH directed the trustee " to invest and re-invest any and all moneys placed in the trust created under ITEM SEVENTH hereof or which may be by it realized from any sale or sales of property or securities constituting a part of the trust created under ITEM SEVENTH hereof, only in such securities as savings banks under the Banking Laws of New York are expressly authorized to invest deposits."

At the times in issue, investment of the funds of savings banks was regulated by former section 239 of the Banking law (see, now § 235). Nowhere in that section was there any direct reference to parts of bonds and mortgages. Moreover, the following provision in respect of bonds and mortgages was thereby made: " A savings bank may invest the moneys deposited therein * * * in the following property and securities and no others * * *. Bonds and mortgages on unincumbered real property situated in this state " (subd. 6). In the face of that statutory formula, the Surrogate felt impelled to find that the investments in parts of bonds and mortgages were a departure by the trustee from the duty imposed upon it by the above Item Eleventh of the testator's will, — i.e., the duty to invest the trust funds " only in such securities as savings banks under the Banking Laws of New York are expressly authorized to invest deposits." A majority of the Appellate Division were of the same opinion.

The funds of the trust were to be laid out " only " in those forms of security which the New York statute " expressly

authorized " as fit for the investment of savings bank deposits. The power thus carefully defined by the testator necessarily excluded other general or implied powers, since the meaning of the conditioning words was plain and did not beget any incongruity or unfairness. No explicit expression in the New York statutes empowered savings banks to invest deposits in parts of bonds and mortgages. Hence the investment of the trust funds in fractional assets of that character was without any warrant, as the courts below have held.

The same former section 239, subd. (6), of the Banking Law contained this restriction: " No investment in any bonds and mortgages shall be made by any savings bank except upon the report of a committee of its trustees charged with the duty of investigating the same, who shall certify to the value of the premises mortgaged or to be mortgaged, according to their judgment, and such report shall be filed and preserved among the records of the corporation." No such investigation was ever made by the trustee in connection with any of the investments that are here in dispute. In the judgment of the courts below, this omission was a further reason for liability on the trustee's part. Again we agree. The trustee is a bank of deposit and trust company. It had a real estate committee composed of a number of its directors and, that being so, its plea of structural inability to obey the last-stated requirement of the statute is not impressive.

Each of the challenged investments was the result of an apportionment of a whole mortgage which had theretofore been held by the trustee in its personal name. In most instances, this period of antecedent individual ownership in the trustee had continued for a number of years before any part of the security was distributed to the present trust. Whether that line of action was in keeping with the strong fiduciary standard of undivided loyalty may be open to doubt; but this record, as it happens, does not call upon us to take account of that matter.

Appraisals were supplied to the trustee on its purchases of the whole mortgages. Those estimates, we think, had become worthless by reason of age. There is even less force in the trustee's evidence that values were discussed in its mortgage department. The applicable statute, as we have noticed,

required that valuations be authoritatively indorsed and kept on file.

The trustee says the beneficiaries acquiesced in its breaches of the trust. On this head, the Surrogate said: "Since it appears to my satisfaction that neither the life beneficiary nor the remaindermen of this trust estate were fully apprised of the facts, and of their rights under the law applicable, and how the acts sought to be confirmed or ratified would be dealt with by a court of equity they are not estopped from objecting to the account." In its affirmance of that finding the Appellate Division was unanimous.

No charge is made of concurrence by any other party in the misconduct of the trustee. Nor is any claim made of actual knowledge by any other party of the failure of the trustee to certify the values of the mortgaged properties. Thus there was ample room for the finding of lack of such conscious assent as will debar a beneficiary from redress for a mishandling of his interests in the execution of a trust.

We pass now to another transaction for which an additional surcharge has been imposed. Among the assets of the estate of the testator were 200 shares of common stock of the American Hard Rubber Company. Conformably to his will these shares were retained in the trust. In 1941, steps were taken to consolidate the rubber company with another concern, through a plan whereby preferred shares of the consolidated company were to have new priorities over its common shares. For some reason, the trustee did not carry out its election to take common stock of the consolidated company in exchange for the common shares of the rubber company that were in the trust. The consolidation was effectuated on December 26, 1941. On that date, the market value of 200 shares of common stock of the rubber company was $3,450. On February 28, 1942, the trustee sold its 200 shares thereof for $2,750.93. The amount of the surcharge is the difference of $699.07.

The trustee was not in duty bound to dispose of its shares of the common stock of the rubber company as soon as the consolidation plan became effective on December 26, 1941. Whether the subsequent period of retention exceeded a reasonable time was the true question on this branch of the case. The Surrogate should now pass upon that question.

The orders should be modified in accordance with this opinion, with costs to all parties appearing separately and filing briefs, and the matter remitted to the Surrogate's Court for further proceedings.

Conway, J. (dissenting). This is an appeal by an accounting testamentary corporate trustee from an order of the Appellate Division affirming, with two justices dissenting in part, a decree of the Surrogate's Court surcharging the trustee for (a) investments in mortgage participations and (b) retaining stock after notice of a proposed consolidation of the issuing corporation with another corporation; except that no appeal is taken with respect to one mortgage participation covering property on Townsend Avenue, and nothing hereafter has reference to that participation unless it is expressly so stated.

The testator died in 1929, leaving a will which had been made in 1926. That will named as sole executor and trustee the accountant. The testator's son, William, one of the objectants, became counsel for the accountant as executor, represented the accountant as its attorney on its accounting as executor, participated in the preparation of its account and was consulted as to some matters by it as trustee.

The investment provisions of the will were as follows:

" Item Tenth: Authority is hereby expressly conferred upon my Executor and Trustee to continue any and all investments placed in the trust created under Item Seventh hereof, in any corporation, partnership or joint ownership, so long as expedient, even though such securities may not be of the class authorized under Item Eleventh hereof, and to hold, sell, dispose of all or any part thereof as in its discretion may be for the best interest of my estate.

" Item Eleventh: I direct by Executor and Trustee to invest and re-invest any and all moneys placed in the trust created under Item Seventh hereof or which may be by it realized from any sale or sales of property or securities constituting a part of the trust created under Item Seventh hereof, only in such securities as savings banks under the Banking Laws of New York are expressly authorized to invest deposits.

" Item Twelfth: It is my will that my Executor and Trustee, while acting in good faith, shall not be held liable or account-

able to any beneficiary hereunder for any loss arising upon any sale through failure or omission to sell any of my property, real or personal, within what might be deemed a reasonable time.''

From the outset, the accountant allotted to itself, at first as executor and later as trustee, participations in whole mortgages acquired and held by it exclusively for trust investment under the formula approved by us in Union Trust Co. (*Matter of Union Trust Co.* [*Hoffman*], 219 N. Y. 514.) Each mortgage investment was a participation so allotted, and in each instance at issue the whole mortgage did not exceed 60% of the value of the mortgaged premises. That procedure was made clear in its account as executor which was made available to each of the objectants or his duly authorized representative on that accounting.

It was known to testator's son William, who represented the accountant as attorney on the settlement of its accounts as executor. It was known to the special guardian on the executor's accounting, who mentioned it specifically in his report to the Surrogate and who approved the account. The delivery, on March 20, 1930, by accountant as executor to itself as trustee of mortgage participations as a corpus of the trust was approved by the Surrogate.

The good faith of the accountant is not questioned. In fact, as late as September, 1942, after she had regularly accepted the income from the mortgage investments for some eleven years, the life beneficiary wrote the accountant: '' May I take this opportunity to compliment the Central Hanover Bank & Trust Co., through you, for its integral honesty & unfailing conscientious adherence to the very letter of my father's will & wishes? ''

By his will, the testator left one quarter of his residuary estate to his three sons in equal shares and three quarters in trust for his daughter, Fredericka, for life, with a one-third remainder to the heirs of his daughter and a two-ninths remainder interest to each of his sons or their respective issue. The life beneficiary is still living and has one son. One of the three sons of testator has died, leaving one son as his sole living issue, and he has consented to this accounting. The two other sons of testator. William Henry Hoyt and Charles A. Hoyt, are living, and each has issue.

After objections had been filed, the parties entered into a stipulation modifying, combining and defining them. Objections were made to mortgage participations, in that stipulation, upon various grounds. The only objection to the participations which was sustained was the second one, reading 1. A. (b): " Mortgage participations were not ' expressly ' authorized as investments for savings banks and hence were not authorized as investments under article ' 11 ' of the above decedent's Will;'' that was sustained by paragraph 4 of the decree: " The Will of the above-named decedent is hereby construed as prohibiting the investment of funds of said trust in the following participations in bonds and mortgages:'', listing them. By paragraph 6 of the decree, every other objection interposed to the account as to participations was " overruled and dismissed.'' That was a finding that the investments in participations had been in all respects properly made, except that they were prohibited under the Surrogate's construction of the will, and that finding has been affirmed. It is the law of the case, as far as the objectants are concerned, since they did not appeal. (Surrogate's Court Act, § 71; *Matter of Hearns,* 214 N. Y. 426, 432; *Wilson* v. *Mechanical Orguinette Co.,* 170 N. Y. 542, 553; *Matter of Davis,* 149 N. Y. 539, 548; *Burns* v. *Burns,* 109 App. Div. 98, affd. 190 N. Y. 211, 215; *Matter of Hood,* 104 N. Y. 103, 106; *Kelsey* v. *Western,* 2 N. Y. 500; *Gen. Fireproofing Co.* v. *Keepsdry Const. Co.,* 225 N. Y. 180, 182, 189.) As we have seen, there is no claim of bad faith. There were three objections, A (a), (c) and (d) made upon the grounds that the accountant had had no appraisal of the type and made in the manner required by Banking Law, section 239, subdivision (6) and that the certificates and valuations obtained by accountant were insufficient to meet the requirements of due care and that *accountant* made no inspection of the premises. Those objections pleaded negligence and lack of due care. As we shall show, there was inspection of the premises here, but we point out that no inspection of premises was required even as to savings bank trustees until the passage of Laws of 1933, chapter 322. When those objections were overruled and dismissed, and this was done after the death of Surrogate Millard, by the new surrogate after full opportunity to be heard by everyone, that was a disposition of all objections involving negligence or lack of due care.

The Surrogate's decision and opinion pointed out that inasmuch as " the acquisition of these mortgage participations by the trustee, * * * was unauthorized, the trustee must bear the responsibility for any loss that may have resulted under the circumstances * * *." In other words, the loss to be borne by the trustee is not because of any allotment of participations in mortgages of improper value or because of failure to attempt to value mortgages, in letter or spirit, as a savings bank under Banking Law, section 239, would have valued them if the trustee here had been a savings bank. The surcharge was because the allotment of participations was unauthorized. Despite the fact that that was the basis for the decision of the Surrogate and despite the fact that no attempt was made to appeal by objectants from that portion of the decree which overruled and dismissed their objections, the appeal has been argued in this court on the theory, as phrased by counsel upon the argument, that Banking Law, section 239 (affecting savings banks only) has not been complied with in letter or spirit by the trust company trustee herein, although there is no finding in this record to support that argument.

When the testator wrote into his will the three items quoted (*supra*), and during the period involved here, the applicable provision of the Banking Law (§ 239, subd. 6) regulating investments of savings banks, read as follows, and, in effect, that provision was written into the will: " A savings bank may invest * * * in the following property and securities * * *: 6. Bonds and mortgages on unincumbered real property situated in this state, to the extent of sixty per centum of the appraised value thereof. * * *."

There are three cases in this court where the fiduciary — a testamentary trustee or a committee — was restricted, just as accountant here, to investments in " securities authorized for savings banks." Those three cases are *Matter of Union Trust Co. (Hoffman)*, (219 N. Y. 514), (1916); *Matter of Smith*, 279 N. Y. 479 (1939); *Matter of Farina*, 279 N. Y. 780 (1939).

At the time of the decision in *Matter of Union Trust Co.*, a trustee was limited in its investments by section 111 of the Decedent Estate Law. That section provided that a trustee might invest trust funds " in the same kind of securities as

those in which savings banks of this state are by law authorized to invest the money deposited therein, and the income derived therefrom, * * * and in bonds and mortgages on unencumbered real property in this state worth fifty per centum more than the amount loaned thereon ''. There was no reference made to '' parts '', '' shares '' or apportionments. Amendments to the Banking Law, section 188, subdivision 7, Decedent Estate Law, section 111, and Personal Property Law, section 21, all occurred subsequently. (See *Matter of Ryan*, 291 N. Y. 376, 399–401.) We can point the situation no more clearly than by quoting the following language from *Matter of Doblin* (FOLEY, S.), 152 Misc. 406, at 408: '' At the time of this decision [*Matter of Union Trust Co.*], section 111 of the Decedent Estate Law fixed the classes of securities in which a trustee was authorized to invest as follows: (a) Those in which savings banks of this State were by law authorized to invest; and (b) bonds and mortgages on unencumbered real property in this State worth fifty percent more than the amount loaned thereon. The terms of the will here imposed no greater restrictions than did the first part of section 111 of the Decedent Estate Law, as it existed when construed in the *Union Trust Co.* case. We have almost an exact parallel between the facts in *Matter of Union Trust Co.* and the facts here. In the *Union Trust Co.* case the trustee under the law was limited to savings bank investments. The only modification permitted by the statute to trustees, but denied to savings banks, was the slightly higher amount of the mortgage with relation to the total value of the property. In the present case the will limited the trustee to investments in savings bank securities. Its directions in substance were the same as the limitations contained in section 111 of the Decedent Estate Law, as construed in *Matter of Union Trust Co.*, except that it restricted the trustee to the percentages of mortgages of the total value applying to savings banks.

'' The practice of trust companies and banks in investing in participations was determined to be lawful in the *Union Trust Co.* case. If such investments were lawful in that case, they were lawful here. We are not concerned with the fact that savings banks by general custom have not invested in mortgage participations. The industry of counsel and the research of the surrogate have failed to disclose any reported judicial

decisions construing directly the powers of a savings bank to invest in participations. The various Superintendents of Banks, as a matter of regulation, have discouraged investments in parts of mortgages. Trustees of savings banks, it is conceded, have followed that policy. Time and experience have proven the wisdom of confining the investments by the savings banks as a matter of policy to whole mortgages. But, regardless of policy, the Court of Appeals has construed the authority of a trustee to invest in savings banks securities, to include the power to invest in participations.

" At the time the will here was written, on February 18, 1927, *Matter of Union Trust Co.* (decided in 1916) had laid down a general rule for the guidance of trustees. *It would be inequitable in such a situation, where a practice sanctioned by the decision of the highest court of the State was adopted by the trustee, to surcharge the trustee for acts done in conformity with it."* (Emphasis supplied.)

Decedent Estate Law, section 111, and Personal Property Law, section 21, were amended in 1918 so as to authorize fiduciaries to invest in " parts or shares " of mortgages which were not held in the name of the fiduciary. Banking Law, section 188, subdivision 7, had been amended in 1917 to permit a trust company to apportion to a trust of which it was trustee " a part interest in a bond and mortgage held * * * in the name of such corporation ". (*Matter of Ryan, supra,* p. 401.)

In 1939, there came before us *Matter of Smith* (279 N. Y. 479). We there construed Civil Practice Act, section 1384-l, enacted in 1929, governing investments of committees. It required investment " in the same kind of securities as those in which savings banks of this state are by law authorized to invest the money deposited therein, and the income derived therefrom, and in bonds and mortgages on unincumbered real property in this state worth fifty per centum more than the amount loaned thereon." That section followed the provisions of the Decedent Estate Law and Personal Property Law, referred to (*supra*), as they were prior to the amendments of 1918, omitting any authorization for investment in " parts " or " shares " or apportionments. Thus there was no authorization, such as the accountant trust company has had, since the amendment to Banking Law, section 188, subdivision 7, in 1917, or the 1918

amendments just referred to. Nevertheless, in *Matter of Smith,* we went back to *Matter of Union Trust Co. (Hoffman)* and approved it. There was then urged the argument, even stronger than the contention of objectants here, that when the Legislature in 1929 wrote into the Civil Practice Act the language of sections 111 of the Decedent Estate Law and 21 of the Personal Property Law as they were prior to 1918, and left out words authorizing investment in " parts " or " shares ", the guardian who had invested in certificates of participation in a mortgage should be surcharged. Indeed he had been surcharged, and the surcharge had been affirmed in the Appellate Division. Nevertheless, we reversed, saying (LEHMAN, J.) :

" This court held in *Matter of Union Trust Co.,* 219 N. Y. 514 (1916), that a trustee even before the amendment of the statute in 1918 had power to combine several trust funds in an investment in a single bond and mortgage, held by the trustee in its own name, provided that the transaction was carried out in manner there described, which would adequately protect the rights and interests of the beneficiary of the trust fund. We did not there hold that a trustee might purchase a certificate of participation in a bond and mortgage held and controlled by another person or trust company. Such an investment would have violated long-established rules governing the form of investments by trustees, and before the amendment of 1918 no trustee could safely disregard these rules. A court would not have been justified in reading into the statute by implication a power to invest trust funds in parts of (sic) shares of bonds and mortgages when such investment was not in accord with established practice or established rules.

" The statute of 1918 changed not only the rule but the practice of investment by trustees. Guaranteed certificates of participation in bonds and mortgages became a very usual form of investment. Undoubtedly investments in such certificates were generally regarded as ' mortgage investments.' The Legislature in statutory definitions of the words ' bonds and mortgages ' or ' mortgage investments ' has in unambiguous language indicated that at least for some purposes and in some statutes these terms are intended to *include shares, parts or interests in bonds and mortgages.* (Cf. General Construction Law [Cons. Laws, ch. 22] § 25-b [added by Laws of 1933, ch. 317];

also an ' Act to provide for the protection of holders of mortgage investments,' popularly known as the Schackno Act [Laws of 1933, ch. 745, § 2] and the Mortgage Commission Act [Laws of 1935, ch. 19, art. 3, § 3]). *The courts have recognized that in common speech investments in ' bonds and mortgages ' would include investments in parts or shares of such bonds and mortgages evidenced by certificates of participation. So the courts have held that the authority given by a testator in his will to a trustee to invest in mortgages includes, by plain implication, authority to invest in guaranteed mortgage participation certificates.* (*Matter of Weinroth*, 254 App. Div. 733.)

\* \* \* \* \* \* \*

" \* \* \* a construction adopted consistently and not casually by the legal department of an official agency and by the courts, and which has been accepted without challenge over a period of years by the public, may not be lightly rejected as unreasonable. It indicates plainly what a fiduciary, reading the statute with reasonable care would understand from its language, and that is the way in which the courts should construe a legislative definition intended to guide the conduct of fiduciaries. \* \* \* " (pp. 484, 488.)

We followed and extended that ruling in *Matter of Farina* (279 N. Y. 780, *supra*) where a group mortgage certificate was involved. In that case, the opinion in the Appellate Division (253 App. Div. 510), affirming the surcharge of the committee, had pointed out " \* \* \* *savings banks* are not authorized to invest in mortgage certificates, *but only in whole mortgages* \* \* \* ". We reversed, squarely upon the authority of *Matter of Smith* (279 N. Y. 479, *supra*).

In *Matter of Stupack* (274 N. Y. 198, LEHMAN, J.), we went further, in order to uphold a purchase by a general guardian of an infant of a " group mortgage certificate " which had been made pursuant to the general custom and usage of fiduciaries, than it is necessary to go in this case. There, we said that the term " bond and mortgage " included " shares " or " parts " of bonds and mortgages and even included " group mortgage certificates ", despite the fact that such certificates did not confer title to the underlying bonds and mortgages. (*Matter of People [Tit. & Mtge. Guar. Co.]*, 264 N. Y. 69.)

That was in good part because " careful fiduciaries and their legal advisers " (p. 213) were justified in relying upon a practical statutory construction of public officers and courts.

In the instant case, there was no purchase by the trustee of " parts " or " shares " or " certificates " as contemplated by the amendments of 1917 and 1918, but a purchase of an entire bond and mortgage and an allocation of it under the Matter of Union Trust Co. (Hoffman) formula approved by this court in that case and again as late as in Matter of Ryan (291 N. Y. 376, 401). Not only that, but the accountant trustee is the successor to Union Trust Co., and a comparison of the records in the two cases discloses that the same officer made the bond and mortgage purchases and allocations in both cases. The Ryan case was a case of self-dealing. Matter of Union Trust Co. [Hoffman] was not. The instant case is not. The Chief Judge disagreed in part in the Ryan case, but none of the three points upon which he disagreed (see bottom of page 418) had any relation to a case such as the Union Trust Company case or the instant case, where no self-dealing is present. We decided in the Ryan case that, because of the relationship between Title Guarantee & Trust Company and Bond & Mortgage Guaranty Company, there was self-dealing as to the trusts involved, and, second, that limited self-dealing was permitted by statute only on condition that a statutory notice of the apportionment to a trust of a part interest in a bond and mortgage owned by the trustee was given, and if not given, even that limited statutory right to self-dealing was not permitted. Here, since there is no self-dealing, the Union Trust Company case and not the Ryan case is the determining one.

The citation and consideration of the Smith, Farina, Stupack and Doblin cases (supra) and the memorandum opinion of the learned Appellate Division herein indicate clearly that the decision below was the result of a misapprehension. The Appellate Division affirmed upon the authority of Matter of Easton (178 Misc. 611, affd. 266 App. Div. 713, leave to appeal denied 291 N. Y. 828). The three justices who voted for affirmance said: " (a) The Easton case involved a testamentary trustee, as in the case at bar and testamentary provisions similar to those herein as to the character of investments to be made. When the Court of Appeals ruled, it had before it the contrary

decision in *Matter of Doblin* (152 Misc. 406) upon whose doctrine the appellants necessarily rely. The Court rejected that doctrine by its action in the *Easton* case in 1943. It also had before it the earlier cases invoked by appellants, *Matter of Smith* (279 N. Y. 479; Jan. 10, 1939) and *Matter of Farina* (279 N. Y. 780; January 10, 1939). The Court must be deemed to have differentiated between a testamentary trustee, as in the *Easton* and instant cases, and a committee of an incompetent, as in the *Smith* and *Farina* cases, because of the difference in the statutes involved and the different factual situations." (268 App. Div. 1002.)

As counsel were advised on the argument by the Chief Judge, we never reached, in the *Easton* case, the point upon which the Appellate Division thought we had denied leave to appeal. There was self-dealing in that case, and that was sufficient for the denial of the motion.

We have pointed out heretofore that under the stipulation of the parties herein and the decree, the only issue was as to whether the allotment of part interests in bonds and mortgages under the *Union Trust Co. (Hoffman)* formula was authorized by testator's will. The learned Surrogate in his opinion and decision, although not in the decree from which the appeal is taken, said that although " under a duty to comply substantially with the statutory methods and procedure regulating the making of such investments " by savings banks under Banking Law, section 239, subdivision 6, the trustee did not so comply with reference to the *appraisal* of mortgaged property. It is difficult to understand the relevancy of that statement since no " appraisal " in terms was required under Banking Law, section 239, subdivision 6, as applicable here. That read as follows: " No investment in any bonds and mortgages shall be made by any savings bank except upon the report of a committee of its trustees charged with the duty of investigating the same, who shall certify to the value of the premises mortgaged or to be mortgaged, according to their judgment, and such report shall be filed and preserved among the records of the corporation." The sentence begins " No investment . . . shall be made by any savings bank " and the trustees referred to are the trustees of a savings bank. There could, of course, be no

literal compliance any more than if the testator had appointed an individual trustee. There could at most be a compliance in spirit by a trust company trustee. It is even more difficult to understand the Surrogate's reference to an " appraisal " when we find a separate " appraisal " obtained by the accountant for each piece of property, printed as an exhibit in this record (pp. 220 *et seq.*), and there is uncontradicted testimony that *between the time of such " appraisal " and the allotments* to the trust of parts of the mortgages there was a continuous check on value by at least three officers of the accountant.

We must remember that the mortgages were upon Manhattan real estate, which is limited in extent, and with which the officers of the trust company were thoroughly familiar. The officers knew the neighborhoods and if they had information relating to a neighborhood " which might indicate a change we would go over the mortgages in the neighborhood. That is one reason we limited ourselves largely to Manhattan because the officers of the company particularly considered that they could keep in touch with them *in our daily affairs* ". As a matter of fact, there was substantial conformity in methods between the trust company trustee and savings banks in selecting mortgages. Concededly there were appraisals by professionals who made their reports to the trust company. In the case of savings banks, the trustees themselves make the valuations. The officers and trustees of accountant thereafter usually acted as a committee, and exercised their own judgment as to value. Maintenance of value and desirability of investments was checked by continual supervision and by a review twice a year. In addition, an independent review was made by an officer of large real estate experience *on each occasion when a participation was issued.* A committee of the trustees of accountant passed upon every investment made in any trust and every apportionment, either in advance or during the week following the making of the investment or of the apportionment, and minutes were kept of the action taken. That action, of necessity, found the required margin of value present. The committee minutes constituted the preservation of the records of those findings on the books of the trust company. All this constituted substantial compliance, both in letter and spirit, with the procedures

required under Banking Law, section 239, for savings banks. The baselessness fundamentally of this overruled objection is shown by the fact that now, by Legislative act, a savings bank may follow a method practically identical with that of the trustee here and may invest " * * * upon the written and signed certificate of two or more persons appointed by the board of trustees * * * " (Banking Law, § 235, subd. 6, par. [e].)

The complete and final answer, however, is found in the fact that the objectants objected on the *ground of insufficiency of value* as to only *one mortgage,* viz, the Townsend Avenue Mortgage which as we have seen (*supra*), *is not before us on this appeal.* Therefore, even if there had never been an appraisal at all, the objectants have not claimed insufficiency of value as to any mortgage herein involved and thus not even the objectants claim any *loss* by reason of the only failure, as found by the Surrogate, although non-existent, by the trustee to comply substantially *with savings bank requirements* as to an appraisal.

Suffice it to say, there is no *finding* or *proof* that in the case of any mortgage with which we are concerned, accountant's methods of inspection, appraisal and the like failed to produce the result intended by the steps to be taken by savings banks under the provisions of the Banking Law applicable only to them. In view of the dismissal of the only objections to the contrary, there was clearly a finding by the Surrogate that the contrary was the fact. Moreover, it is and of necessity must be a complete answer to any claimed duty of complying with the procedure of savings banks in the inspection and appraisal of the mortgaged premises, that there is no proof that the procedure taken by the accountant failed to produce the exact result called for under savings banks' procedure or that the mortgage failed to comply with every requirement for investments by savings banks. It was only as to the Townsend Avenue participation that it was claimed that the requisite value was not present, and that participation is not involved on this appeal. *In other words, insufficiency of value is not claimed as to any investment before this court.* It would only be as to value that an appraisal would have relevancy.

Thus, in any event, objectants have not carried their burden of showing that the methods used *were the proximate cause of any loss.* The general rule was stated in *Wilmerding* v. *McKesson et al.* (103 N. Y. 329, 340), as follows: " The failure of the defendants to make a separation of the securities, as contemplated by the will, did not induce or cause the spoilation of the estate by George G. Wilmerding, nor would it have been prevented if such separation had been made. There must be a conjunction of wrong and loss to sustain a liability upon any such ground (*Croft* v. *Williams,* 88 N. Y. 384), and as this does not appear, the appellant's claim cannot be upheld." Similarly, it was said by Surrogate MILLARD in *In Re Gibson's Will* (40 N. Y. S. 2d 727, 733): " * * * Objectants contend, in effect, that the failure to require an appraisal of the bond and mortgage in question is a jurisdictional defect and that the Court lacked power to direct distribution in kind in the absence of such appraisal. It should be here observed that there is no direct causal relation between the failure to obtain the appraisal prescribed, and any loss that may ultimately result from the allocation of the mortgage to these trusts." (See, also, *Chesterman et al.* v. *Eyland,* 81 N. Y. 398, 404; *Croft* v. *Williams et al.,* 88 N. Y. 384, 391.)

We think the testator intended that the trustee he selected should act in accordance with the statutes governing it, but that it should select for investment securities expressly authorized for savings banks, among them bonds and mortgages. Bonds and mortgages were expressly authorized for savings banks. We have said, in the cases discussed (*supra*) that bonds and mortgages mean participations in them. Certainly it cannot be said, as a matter of law, that when the testator selected a trust company trustee that he intended a savings bank trustee. He made but one restriction upon his trust company trustee, viz., as to the *securities* in which it might invest. The restriction was as to the character of security and not as to the internal activities of the type of banking corporation which he selected as his trustee. We think the following from *Matter of Doelger* (254 App. Div. 178, 184, affd. 279 N. Y. 646), is applicable: " In directing the creation of the statutory entity the testator must be deemed to have intended the normal consequences of his act, namely, the creation of a corporation with

all the powers conferred upon it by the statute governing its existence except as expressly otherwise provided against in the will. This the testator herein apparently knew.''

Here, the accountant trust company trustee had express authority from the Legislature to invest in '' bonds and mortgages '' and Banking Law, section 188, subdivision 7, provided, insofar as applicable, '' Investments in bond and mortgage * * * may be made by apportioning * * * a part interest in a bond and mortgage held by or in the name of such corporation, individually or in any representative capacity * * *.'' That is precisely what the accountant did, and there never has been any claim that it failed to comply with that Banking Law section.

We now come to the matter of the '' retention '' of the 200 shares of American Hard Rubber Company (hereinafter called American) common stock, and it is only as to their '' retention '' that objection was made. The objection reads: '' Objection is made to the retention by petitioner of 200 shares of American Hard Rubber Company common stock after December 6, 1941, when notice was issued by said Company of a proposal for the consolidation of said Company with Pequanoc Rubber Company.'' The will, as we have already seen, provided: '' Authority is hereby expressly conferred upon my Executor and Trustee to continue any and all investments placed in the trust * * * so long as expedient, * * * ''. Also '' It is my will that my Executor and Trustee, while acting in good faith, shall not be held liable or accountable to any beneficiary hereunder for any loss arising upon any sale through failure or omission to sell any of my property, real or personal, within what might be deemed a reasonable time.''

On December 10, 1941 (three days after Pearl Harbor) the accountant received notice of a proposed consolidation of American with Pequanoc Rubber Corporation, the latter formed to effect the consolidation of the former with Pequanoc Rubber Company of which American already owned 46% of the common stock. The merger was '' strongly recommended '' by the directors of American as '' highly advantageous '' to the company's stockholders. The accountant, after prompt review of the situation, thought the merger was advantageous and on December 15, 1941, asked its counsel, testator's son

William, " whether, in your opinion, we should be authorized, if the plan becomes effective, to exchange the shares held for this trust for the new stock and to continue retention of the new stock under the terms of Paragraph Ten." No prompt reply came from testator's son. No one *knew* then, of course, what the effect of the declaration of war against Japan would have upon the rubber industry. While awaiting his reply, the accountant received notice from American dated December 31, 1941, stating that the consolidation had been approved on December 26, 1941, by a vote of 75% of the outstanding stock and that the plan had been declared operative. Two months and twelve days after the accountant had asked for its counsel's advice, the testator's son (now an objectant) replied under date of February 27, 1942, expressing the opinion that it was " doubtful " whether receipt and retention of the new stock was authorized. The following day, February 28, 1942, the accountant entered an order for the sale of the old shares without exchange for the new. Between December 26, 1941, the day of the meeting of the stockholders to vote upon the proposed consolidation (and it is from that date that the accountant has been surcharged), and the date upon which the sale was completed, the stock depreciated in the sum of $699.07, and that is the amount of the surcharge.

We find at the very outset that the learned Surrogate labored under a misapprehension of fact in reaching his conclusion. He spoke of " the acceptance and retention of the common stock of the consolidated company * * *." The accountant made no exchange but sold the old shares which it was expressly permitted to continue to hold and as to which it was not to be accountable for loss for failure to sell, within what might be deemed a reasonable time, so long as it was acting in good faith. Here, there was no finding as to what constituted a reasonable time within which to sell the shares. If the meeting on December 26, 1941, had not approved the proposed consolidation, there would have been no reason then for selling. The accountant has been surcharged as of the date of that meeting. It has not been given time even to be notified formally of the vote taken. It took its counsel, now an objectant, nearly two and one half months, during this period of world cataclysm, to reach a conclusion only that it was " doubtful " whether accountant had the right to exchange the shares and to retain the new stock.

It must be conceded by objectants that the trustee had a reasonable time within which to sell after it became its duty to sell. The objection was to the " retention " after December 6, 1941, " when notice was issued by said Company [American] of a proposal for the consolidation." Counsel at the trial spoke of " improper retention of 200 shares of American Hard Rubber common after the notice of consolidation." Did accountant become obligated to sell immediately upon notice of a proposal for consolidation? Clearly not. The surcharge here runs from the date of the meeting which approved consolidation. If that was the day, December 26, 1941, upon which the duty of sale arose, the accountant had a reasonable time thereafter to sell. (*Matter of Garvin*, 256 N. Y. 518; *Matter of Clark*, 257 N. Y. 132.) Here, not even twenty-four hours was permitted. There is no question of good faith involved. It was the business judgment of accountant to make the exchange, and it voted for the consolidation. Surely a " reasonable " time included the period which it took its counsel, who was considered the family representative, to make up his mind that exchange and retention of the new shares was of " doubtful " legality. Again, here, there was no proof that the loss of less than two points was due to the consolidation of the two companies, rather than to the conditions affecting the rubber industry following Pearl Harbor. Under the terms of the will and the factual situation disclosed, the surcharge as of December 26, 1941, with *no allowance at all* of time to sell, was error as a matter of law and requires the remission of this phase of the controversy to the Surrogate for appropriate findings and decision thereon.

No matter what the date be determined to be on which the duty to sell the American shares arose, the trustee was required to liquidate so as to protect the trust and is allowed a reasonable time within which so to do. (*Chemical Bank & Trust Co.* v. *Ott*, 274 N. Y. 572; *In the Matter, etc., of Estate of Weston*, 91 N. Y. 502; *Matter of Clark*, 257 N. Y. 132, 138–39.) A trustee has a right to participate in a consolidation, even though retention thereafter of the new securities would not be proper, if in the exercise of sound business judgment, it appears to the trustee that the consolidation would be advantageous to the trust and more might be obtained on the sale of the new securities. (See *Stark* v. *National City Bank*, 278 N. Y. 388, 402; 123 A. L. R. 99.)

Here, it has been held that a trustee must sell securities on the very day that a consolidation is voted, without being able to tell up to that day whether the consolidation will be approved and without being able to wait even for formal notification of the vote taken and without regard for its own business judgment. No such rule has ever been laid down in this State before. It is not necessary here to discuss the merits of the consolidation. Suffice it to say that there was here no " radically different " investment and no " change of identity " in substance in the shares, as in the case of *Mertz* v. *Guaranty Trust Co.* (247 N. Y. 137, 141). There was no " new " or " different " venture proposed. There was, in substance, an adjustment of capital from an 8% noncallable preferred to a 7% callable preferred stock, with a small additional investment in a company in which there was already ownership of 46% of the common stock, and an increase in the preferred stock to the extent that there was an increase of dividend requirements for such preferred stock of $2,039 per annum.

The order appealed from should be reversed, the objections dismissed and petitioner's account of proceedings settled and approved as filed, except as to the matter of the retention of the American Hard Rubber Company shares, as to which, the matter should be remitted to the Surrogate for action not inconsistent with this opinion.

LEHMAN, Ch. J., DESMOND, THACHER and DYE, JJ., concur with LOUGHRAN, J.; CONWAY, J., dissents in opinion in which LEWIS, J., concurs.

Ordered accordingly. [See 294 N. Y. 979.]