In the Matter of the Accounting of CITY BANK FARMERS TRUST COMPANY, as Successor Trustee under the Will of CHARLES W. HOGAN, Deceased.

Surrogate's Court, New York County, August 19, 1953.

*E. J. Hoare* for successor trustee, petitioner.

*Francis K. Decker* for Dorothy H. de Remer and others, respondents.

*Joseph C. Kenney,* special guardian for Llewellyn P. Hall and another, infants, respondents.

COLLINS, S. The objections to the intermediate account of the successor trustee relate chiefly to three investments in mortgage participations. It is charged (1) that the trustee exceeded its authority in making such investments because it has no power under the will to invest in mortgage participations;

(2) that each of the three investments involved self-dealing on the part of the trustee; and finally that, in any event, one of the mortgages was not a legal investment because it contained a demolition clause.

(1) The will authorizes the trustee to retain '' all stocks, bonds and other securities '' which the testator might own at the time of his death or to sell any of them in its discretion, and to invest the proceeds '' in other securities which are legal investments for trust funds in the State of New York.'' At the time the disputed investments were made, a trustee holding a number of trust funds could, under our law, invest them, subject to proper safeguards, in a single mortgage. (*Matter of Stupack,* 274 N. Y. 198, 207.) The will of this testator cannot fairly be read as limiting new investments to '' stocks, bonds and other securities '' of the kind owned by testator. The word '' securities '' generally embraces bonds and mortgages. (*Matter of New York Tit. & Mtge. Co.,* 160 Misc. 67, 80.) In this will it is patent that the testator used the words '' securities which are legal investments for trust funds '' to mean all investments permissible by law for trustees generally. His purpose was to permit retention of nonlegals but to confine new investments to those permitted by statute. The challenged investments were legal investments.

(2) The successor trustee is a trust company which administers a large number of separate funds as executor, trustee, guardian, committee or custodian. With respect to the three investments now in issue, the trust company did not first collect moneys from the various estates and funds, combine them and then seek a mortgage or mortgages which would exhaust the combined funds. Rather it first, through its mortgage department, procured the mortgages and then proceeded to allocate them to the different estates and funds which had money available for investment. Thus, the William and Beaver Corporation mortgage was closed by the trust company on June 3, 1930, a portion of the mortgage was allocated to this trust on the very same day, and the mortgage was completely allocated to trusts and funds administered or managed by the bank on August 1, 1930. The Kutner mortgage was closed by the trust company on September 2, 1930; a share was allocated to this trust on September 5, 1930; and it was completely allocated by September 10, 1930. The 950 Park Avenue Corporation mortgage was closed on June 22, 1931; a share was allocated to this trust on the very same day; and the mortgage was completely apportioned among estates and other funds by June 26, 1931.

The objectants claim that because the trust company had originally disbursed its own funds by drawing a check on its general funds, the transaction became a purchase for its own account and a sale to the various estates with the result that there was self-dealing even in respect of the two mortgages where apportionment was made to this trust on the very same day that the mortgage was closed. As further evidence of self-dealing, objectants argue that an interest in each of the mortgages was allocated to the trust company on the date of closing, and that therefore the trust company was selling to its estates and trusts interests in mortgages in which it retained a share. The records show, however, that the apportionment to the trust company was to its '' Investment A/C '' and that the amount so set aside was reserved for various funds in which other assets were being sold so that it could participate in the mortgage. In each case the mortgage was completely apportioned among estates and funds within a very short time.

The '' mere fact that the trustee advanced its own money in the first place but acquired the mortgages for the purpose of distributing them among the trust estates administered by it and where only a short interval elapses between the purchase and distribution, there is not such self-dealing as to make the transaction improper. The trustee would rarely be able as a practical matter to advance the money in the first place wholly out of the trust funds of the various trusts, and the advance of its own funds is made not for the purpose of investing its own funds but for the purpose of obtaining an investment for the various trust estates.'' (2 Scott on Trusts, pp. 882, 883; *Matter of Coulter,* 121 N. Y. S. 2d 535.) Moreover, in the administration of a number of separate funds where the aim is to keep the funds productive as steadily as possible, cash cannot be available in all participating estates on the same day. In each case the interval between closing date and complete allocation was a short one, namely, four days, eight days and fifty-eight days, respectively. In respect of the last-mentioned mortgage of $3,000,000, all but $589,900 was apportioned at once. During the same month all but $92,000 was apportioned. The balance was allocated to estates and funds by August 1st. Only by completely ignoring reality could we say that any of these purchases was made for the trust company's own account. The only fair view of the transactions is that the trust company was engaged in combining trust funds for investment and acquired the mortgages only for the purpose of distributing them among the trusts, estates and funds.

In each case the trustee gave prompt notice to the income beneficiary and properly earmarked the interest of this estate in the combined investment. The court finds that the trustee was not engaged in making an investment for its own account but was attempting to make an investment for the benefit of a number of estates and funds under its supervision. The court holds that the trustee was not guilty of self-dealing, and that the investments were not on that ground improper.

(3) The mortgage on the William and Beaver Streets property gave to the mortgagor the privilege to demolish the buildings for the purpose of erecting a new structure or structures, provided that before commencing such demolition (1) it pay to the mortgagee $250,000 with accrued interest to the date of payment and (2) deliver to the mortgagee a satisfactory bond guaranteeing that the construction of a new building would commence immediately and continue to completion without unnecessary delay. The liability under such surety bond was to continue in force and effect until at least $500,000 of new work had been done and the new building project carried on. Objectants argue that because of this clause the mortgage was not a legal investment for trustees under section 111 of the Decedent Estate Law, as it existed in 1930. (L. 1928, ch. 362.) That statute permitted investment '' in bonds and mortgages on unincumbered real property in this state worth fifty per centum more than the amount loaned thereon, and in shares or parts of such bonds and mortgages,'' under conditions not pertinent to this point.

It was expressly stated at the hearing that there was no issue as to the adequacy of the value of the real estate. Objectants make no charge of negligence in making the investment. The evidence indicates that the whole mortgage was in the total sum of $3,000,000 and that at the time it was made, the land was appraised at $3,950,000 and the buildings at $650,000. The privilege to demolish the existing structures and erect new buildings was never in fact exercised. It is not charged that the real property was encumbered in any manner other than the mortgage.

The court holds that the real property was worth 50% more than the amount loaned thereon, that adequate provision was made to preserve that value in the event that the privilege was exercised and that the investment was legal under the statute.

The objections are accordingly overruled, except the first objection of the special guardian which is withdrawn.

Submit decree on notice settling the account accordingly.